Jack M. HAEFLING, Plaintiff–Appellant,

v.

UNITED PARCEL SERVICE, INC., Defendant–Appellee.

No. 97–1658.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1998.

Decided March 4, 1999.

Kevin W. Betz (argued), Indianapolis, IN, for Plaintiff–Appellant.

Daniel C. Emerson (argued), Andrew M. McNeil (on the brief), Bose, McKinney & Evans, Indianapolis, IN, for Defendant–Appellee.

Before FLAUM, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

United Parcel Service ("UPS") terminated Jack Haefling's employment for poor attendance. Haefling filed suit against UPS alleging that his termination violated the Family and Medical Leave Act ("FMLA" or "Act"), and UPS moved for summary judgment. The district court granted this motion based on the court's conclusion that the undisputed facts failed to establish that Haefling "suffered from a serious medical condition" or that his condition rendered him "unable to perform the functions of his position" with UPS, as required by the FMLA. Because we

agree with the district court's conclusion, we affirm.

## I. History

UPS is engaged in the small package pickup and delivery business throughout most of the world. UPS employees pick up packages from customers and transport these packages to UPS distribution centers. Once these packages have been delivered to the distribution centers, the packages are sorted and loaded onto UPS feeder trucks for delivery to distribution hubs where the packages are again sorted, reloaded, and transported to the UPS centers nearest to the package's ultimate destination.

Jack Haefling began his employment with UPS in 1972 at the Terre Haute, Indiana, UPS facility. Haefling was hired initially as a part-time reloader. One year later, he accepted a position as a full-time feeder driver and was transferred to the Indianapolis, Indiana, facility. In this capacity, Haefling hauled packages from one UPS site to another (principally between Indianapolis and Chicago). Haefling occupied this position from 1973 until his termination in 1995.

On April 18, 1994, a loaded dump truck struck the rear of an automobile driven by Haefling, aggravating a preexisting neck injury. Despite the accident and the aggravation of his neck injury, Haefling reported to work at UPS that evening and completed his shift. The following day Haefling drove to the hospital where hospital personnel took x-rays of his neck. These x-rays ruled out any fractures in his neck and confirmed the presence of scar tissue from the previous injury. Haefling was treated and released with instructions to "take it easy." Haefling also received a prescription for hydrocodone to be taken for pain as needed.

Soon thereafter, Haefling retained the services of an attorney to represent him in a personal injury suit he filed against the other driver involved in the April 18, 1994, accident. As part of that litigation, the attorney arranged for Haefling to see a doctor for consultation. Haefling visited the doctor approximately ten times during the nine to ten month period following the accident. Haefling characterized his visits with the doctor as general checkups, lasting about twenty minutes apiece. During the course of these visits, Haefling described the pain in his neck and indicated that he had suffered from nauseous headaches on three occasions. Haefling continued to take hydrocodone for pain approximately twelve times throughout 1994.

The doctor referred Haefling to the Rehabilitation Hospital of Indiana for physical therapy. From May 1994 until March 1995, Haefling attended twenty to thirty physical therapy sessions, during which physical therapists rubbed his neck, conducted muscle exercises, and applied heat and ultrasound therapy. Haefling also continued to take a muscle relaxant on the seven or eight occasions when, according to his description, his neck "locked up." Haefling was never admitted to any hospital or other health care facility for his neck injury, and there was no indication that the injury limited his daily activities. However, Haefling described his ability to perform the functions as a feeder driver for UPS as "spasmodic." Between the date of the accident and the termination of his employment with UPS, Haefling attributed nine absences from work as resulting from his neck injury.

UPS relies upon an informal employee attendance policy, pursuant to which employees are expected to maintain an absence rate below four percent of their scheduled workdays in any rolling 200 workday period. In enforcing its policy, UPS considers both the total number of days that an employee is absent, as well as the total number of "occurrences" resulting from an employee's absences. An "occurrence" is defined by UPS as consecutive days of absence uninterrupted by a day worked. UPS generally considers individuals with more "occurrences" to have worse attendance records than individuals who have been absent the same number of days, but with fewer "occurrences." Employees who violate UPS's absenteeism policy are subject to progressive discipline ranging from verbal reprimands to termination.

UPS eventually terminated Haefling's employment as a result of his excessive absenteeism and his failure to abide by UPS's attendance policy. During the period leading

up to the termination of Haefling's employment, the attendance records for Haefling maintained by UPS indicate that he was absent from work at least thirty-two of the 257 days he was scheduled to work (an absence rate of approximately twelve percent). The district court relied on Haefling's personal diary to establish Haefling's attendance rate for this same period. This diary, which purportedly contained Haefling's notes on his own attendance, off-set some of the absences contained in UPS's attendance records. However, the diary still indicated that Haefling missed twenty-five scheduled work days, which, in part, constituted seventeen occurrences. In examining the two hundred day period immediately preceding the termination of Haefling's employment, the district court found that Haefling missed eighteen days on eleven occurrences for reasons ranging from heat exhaustion, to a suspended license, to the flu. Of those eighteen absences, only seven days and five occurrences are attributed to Haefling's neck injury according to the district court's reading of Haefling's diary.

UPS matched Haefling's escalating number of absences with escalating levels of disciplinary measures. The disciplinary measures initially were limited to oral reprimands and warning letters. Despite repeated reprimands and warnings, Haefling's attendance failed to improve. UPS eventually issued Haefling a suspension on September 26, 1994, and a final warning on November 10, 1994. On December 27, 1994, UPS terminated Haefling for excessive absenteeism and for violating the November 10, 1994, final warning.

In response to his termination, Haefling filed a grievance pursuant to a collective bargaining agreement and continued to work for UPS during the resolution of this grievance. Following a hearing before the grievance board on this matter, the termination was reduced to yet another final warning and Haefling was offered a second "last chance" to improve his attendance. Haefling missed work from February 15, 1995, to February 17, 1995, claiming he was suffering from the flu. On February 20, 1995, UPS again terminated him. Haefling filed a second grievance

asserting, in part, that this termination violated the FMLA. This grievance was ultimately denied, and Haefling's discharge was upheld.

Haefling filed suit against UPS in district court alleging that the termination of his employment violated the FMLA. Specifically, Haefling claimed that UPS terminated his employment because of absences directly related to a "serious health condition" as this phrase is defined by the FMLA and, therefore, the termination of his employment was improper. UPS moved for summary judgment. The district court granted UPS's motion based on the court's conclusion that Haefling failed to raise a genuine issue of material fact regarding his entitlement to protection under the FMLA. Specifically, the court determined that Haefling failed to present sufficient evidence to establish that he suffered from a "serious health condition" that rendered him "unable to perform the functions of [his] position" as the FMLA required. Haefling now appeals.

## II. ANALYSIS

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*, drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996). "A genuine issue for trial exists only when a reasonable jury could find for the party op-

posing the motion based on the record as a whole." *Roger v. Yellow Freight Sys., Inc.,* 21 F.3d 146, 149 (7th Cir.1994).

## B. The FMLA Claim

Under the FMLA, eligible employees may take twelve work weeks of leave within a twelve month period in the event that the employee suffers from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). At the conclusion of the qualified leave period, the employee is entitled to reinstatement to the position the employee previously held or to an equivalent one with the same terms and benefits that existed prior to the exercise of leave. 29 U.S.C. § 2614(a). The FMLA further provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1).

In the present case, the district court granted UPS's motion for summary judgment, in part, based on the court's determination that Haefling failed to establish that he suffered from a "serious health condition."[1] A "serious health condition" is defined under the FMLA as "an illness, injury, impairment, or physical or mental condition that involves ... inpatient care ... or continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

■ Although the language of the Act provides little guidance on the meaning of the phrase "serious health condition," the Department of Labor issued regulations addressing the meaning of this phrase pursuant to an express congressional delegation of authority to the Secretary of Labor to promulgate regulations "necessary to carry out" the FMLA. *See* 29 U.S.C. § 2654. However, the final regulations did not become effective until after Haefling's absences and resulting termination from UPS. *See* 60 Fed.Reg. 2180 (1995), *amended by* 60 Fed.Reg. 6658 (1995)

(deferring effective date of the final regulations until April 6, 1995); *see also Stoops v. One Call Comm., Inc.,* 141 F.3d 309, 311 (7th Cir.1998). Regulations, like statutes, cannot be applied retroactively without express direction to do so. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). "Because the FMLA's grant of authority to the Secretary of Labor to promulgate regulations ... does not affirmatively grant her the authority to make those regulations retroactive, and because the final regulations themselves do not provide any indication that they are to be applied retroactively," *Bauer v. Varity Dayton–Walther Corp.,* 118 F.3d 1109, 1111 n. 1 (6th Cir.1997), the final regulations do not govern this case.

■ At the time of Haefling's termination, interim final rules defining the phrase "serious health condition" had been issued by the Department of Labor as a precursor to the final regulations. The interim final rules are applicable to this case. These rules defined the phrase "serious health condition" as "an illness, injury, impairment, or physical or mental condition" that involves one of the three following situations:

(1) Any period of incapacity or treatment in connection with or consequent to inpatient care (*i.e.,* overnight stay) in a hospital, hospice, or residential health care facility;

(2) Any period of incapacity requiring absence from work, school, or other regular daily activities, of more than three calendar days, that also involves continuing treatment by (or under the supervision of) a health care provider; or

(3) Continuing treatment by (or under the supervision of) a health care provider for a chronic or long-term health condition that is incurable or so serious that, if not treated, would likely result in a period of

---

1. The district court concluded in the alternative that even if Haefling could establish that he suffered from a "serious health condition," the record contained no evidence demonstrating that such a condition rendered him unable to perform

the functions of his position as the FMLA required. Because we conclude that Haefling did not suffer from a "serious health condition," we need not consider whether he was unable to perform the functions of his position at UPS.

incapacity of more than three calendar days; or for prenatal care.

29 C.F.R. § 825.114(a)(1)-(3) (1993).

 Whether an illness or injury constitutes a "serious health condition" under the FMLA is a legal question that an employee may not sidestep in the context of summary judgment merely by alleging his condition to be so. We have explained that in the context of the substantive statutory rights contained within the FMLA, an employee must demonstrate by a preponderance of the evidence that he is entitled to the disputed leave. *See Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir.1997) ("We shall continue to resolve suits under the FMLA ... by asking whether the plaintiff has established, by a preponderance of the evidence, that he is entitled to the benefit he claims."). In the present case, Haefling did not receive "inpatient care" for his neck injury. Therefore, he must point to evidence in the record showing that his neck injury falls within one of the two remaining categories in order to establish that he suffered from a "serious health condition."

 We consider first whether sufficient evidence exists demonstrating that Haefling's neck injury resulted in a "period of incapacity requiring absence from work, school, or other regular daily activities, of more than three calendar days, that also involves continuing treatment by (or under the supervision of) a health care provider." 29 C.F.R. § 825.114(a)(2) (1993). The interim final rules contemplate a two-pronged showing to be made by the plaintiff. The plaintiff must make a threshold demonstration that the illness or injury at issue resulted in an incapacity requiring absence from work or school or an absence from or an inability to perform daily activities for more than three calendar days. The plaintiff must then show that he received continuing treatment as a result of this incapacity. Without such a showing, the plaintiff cannot rely on this definition of a "serious health condition" to defeat a motion for summary judgment.

 Although the period of "more than three calendar days" is not modified by the inclusion of the requirement that the three calendar days be consecutive, it is our conclusion that the interim rules should be read so as to require the period of incapacity to span consecutive days. First, it is appropriate to refer to the final regulations promulgated by the Department of Labor as an aid to interpret the interim final rule. *See Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 186 (3d Cir. 1997) (referring to the final regulations as an aid in interpreting the interim final rules); *see also Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 162 n. 8 (1st Cir.1998) ("It is arguable that we should read the word 'consecutive' into the interim regulations as well. We will analyze the present case as if more than three consecutive days' absence were required."). The final regulations require the period of incapacity to span "more than three consecutive calendar days." 29 C.F.R. § 825.114(a)(2)(i) (1998). Second, the FMLA was designed to cover serious illnesses that last more than a few days. It is hardly plausible that Congress intended to elevate minor illnesses lasting a day or two to the stuff of federal litigation. This result would certainly occur if an employee was permitted to piece together nonconsecutive days of incapacitation in order to invoke the protections afforded by the FMLA. Accordingly, in order for an employee to establish that his illness or injury falls within this prong, a plaintiff must demonstrate that the duration of the incapacity lasted more than three consecutive calendar days.

In the case before us, Haefling would have to overcome a significant obstacle—his own diary—to convince us that any period of incapacity he suffered as a result of his neck injury extended beyond three consecutive calendar days. In order to establish incapacity, a plaintiff must show that the condition at issue requires absence from work or school or results in an absence from or an inability to perform other daily activities. The diary Haefling submitted to the district court documenting his absences from UPS provides no indication that his neck injury required him to be absent from work for more than three consecutive days. At most, the diary shows that Haefling was unable to attend work as a result of his neck injury on July 28–29 and on August 1. Haefling was not scheduled to work on either July 30 or

July 31. Even if we were to conclude that an employee could string together absences from work and absences from routine daily activities to establish a period of incapacity (as Haefling argues), the record is devoid of any evidence demonstrating that his neck injury resulted in an inability of Haefling to perform routine daily activities on the days he was not scheduled to work. The diary provides no assistance; it merely states: "Still sick." Haefling's deposition testimony also belies his claim of incapacitation with regard to his ability to perform daily activities on those days. Haefling testified that: he was able to take care of himself; he was able to eat and drink; the injury did not interfere with his ability to engage in marital relations; and he was able to learn.

■ While a list of routine daily activities would certainly encompass more than eating, drinking, and learning, Haefling has simply failed to adduce any evidence that would demonstrate a period of incapacity greater than three consecutive days. In the context of the FMLA, when an illness or injury spans a period of time during which an employee is not scheduled to work, it is arguable that the interim final rules contemplate that an employee may submit evidence that demonstrates an absence from or an inability to perform regular daily activities. This showing would not be a difficult one. However, the complete lack of evidence in the record on this issue makes it impossible for Haefling to demonstrate entitlement to leave under this broad definition of a "serious health condition." Although it may be a reasonable inference that a feeder driver employed by UPS who was unable to perform routine daily activities would probably be unable to attend work, the inverse is not necessarily true. And while all reasonable inferences must be drawn in favor of the party opposing summary judgment, we are under no obligation to draw these inferences from assumptions that are unsupported by the record. Such would be the result if we assumed that a condition rendering an employee incapable of performing his work duties automatically rendered the employee incapable of performing daily activities. Accordingly, Haefling's failure to come forward with any evidence that the condition of his neck precluded him from performing certain daily activities necessarily precludes a finding that his injury incapacitated him for a period of more than three consecutive days.

■ Haefling also fails to establish that his condition falls within the remaining provision of the interim final rules defining the phrase "serious health condition." The remaining provision requires the plaintiff to establish that the injury or illness involves "[c]ontinuing treatment by (or under the supervision of) a health care provider for a chronic or long-term health condition that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than three calendar days...." 29 C.F.R. § 825.114(a)(3) (1993). The interim final rules identify persons suffering from Alzheimer's disease, persons who have suffered a severe stroke, or persons in the terminal stages of a disease who may not be receiving active medical treatment, as examples of individuals suffering from serious or incurable long-term or chronic conditions. 29 C.F.R. § 825.114(b)(3) (1993).

We conclude that the evidence in the record also falls short of satisfying this definition of a "serious health condition." The record does not contain any evidence demonstrating that Haefling's neck injury constituted a chronic or long-term health condition of the severity contemplated by the FMLA. Indeed, although Haefling testified in his deposition that he visited a doctor upon referral by his attorney and attended physical therapy sessions, there is no evidence in the record establishing that Haefling's condition required any medical treatment whatsoever. The interim final rules specifically exclude voluntary treatments "which are not medically necessary" from the definition of "serious health condition." *See* 29 C.F.R. § 825.114(c) (1993). Haefling did not submit an affidavit from his own doctor or any other medical personnel demonstrating the necessity of the "treatments" he supposedly received, and Haefling's own self-serving assertions regarding the severity of his medical condition and the treatment it required are insufficient to raise an issue of fact on this point. The complete dearth of evidence sub-

mitted by Haefling on this issue compels the conclusion that Haefling is incapable of establishing that he suffered from a "serious health condition," as this term is defined by the FMLA.

### III. CONCLUSION

Because we conclude that the evidence in the record before us is insufficient to establish a genuine issue of material fact regarding whether Haefling suffered from a "serious health condition" under the FMLA, we AFFIRM the judgment of the district court.