Otis COCHRAN, III and Dianne Cochran, as Co–Administrators of the Estate of Stephanie Cochran, Deceased, Plaintiffs

v.

CSX TRANSPORTATION, INC. and National Railroad Passenger Corporation, a/k/a Amtrak, Defendants

No. 4:98 CV 57 AR.

United States District Court,
N.D. Indiana,
Hammond Division.

June 30, 2000.

Steven J. Sersic, Timothy F. Kelly and Associates, Connie J. Postelli, Rubino and Crosmer, Munster, IN, for plaintiffs.

Harold Abrahamson, Michael C. Adley, Abrahamson Reed and Adley, Hammond, IN, for defendants.

### ORDER

RODOVICH, United States Magistrate Judge.

This matter is before the court on the Motion for Summary Judgment filed by the defendants, CSX Transportation, Inc., and National Railroad Passenger Corporation, a/k/a Amtrak, on April 28, 2000. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART.**

### Background

The present action was brought by the administrators of the estate of Stephanie Cochran, who was killed when her automobile was struck by a train on March 14, 1998, while Cochran attempted to cross a grade crossing on County Road 400 North near Fair Oaks, Indiana. The plaintiffs allege a number of tort theories against the defendants, CSX Transportation, Inc. and National Railroad Passenger Corporation, commonly known as Amtrak.

On the morning of the incident, Cochran was leaving the home of Tara Sutton, where she had spent the night. The cross-ing where the incident occurred was within sight of the Sutton home. Cochran's departure was witnessed by Teanna Sutton, the younger sister of Tara, who was 14 years old at the time of the incident. Teanna estimated that Cochran was traveling slightly faster than a person would walk as she approached the crossing grade on C.R. 400 N. Before Cochran reached the crossing, Teanna observed Cochran's brake lights go on. However, Teanna did not witness the collision which caused Cochran's death nor did she hear its impact. The conductor of Amtrak's train, Loretta Marowell, estimated that Cochran was traveling at approximately 20 miles per hour when she attempted to cross the railroad tracks. The posted speed limit was 55 miles per hour for the highway.

The plaintiffs brought the present diversity action against CSX and Amtrak alleging a number of tort theories. The plaintiffs first contend that the defendants failed to maintain an unobstructed view for 1,500 feet along the railroad right of way as required by Indiana law. The plaintiffs further contend that the defendants failed to construct and maintain the crossing grade properly and failed to determine that the crossing was extra-hazardous and provide adequate warning devices. Finally, the plaintiffs allege that the defendants failed to maintain a proper lookout, failed to take reasonable steps to avoid a collision, and failed to sound a proper warning whistle as required under Indiana law.

The defendants have moved for summary judgment on two grounds. First, they contend that the plaintiffs' action is preempted by federal law insofar as it alleges that the defendants were negligent in providing proper warning devices at the crossing. Second, the defendants maintain that recovery for the plaintiffs is barred under the Indiana Comparative Fault Act because the facts support a finding that Cochran was more than 50 percent negligent as a matter of law.

## Discussion

### I. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Robin v. Espo Engineering Corporation,* 200 F.3d 1081, 1087 (7th Cir.2000); *Haefling v. United Parcel Service, Inc.,* 169 F.3d 494, 497 (7th Cir. 1999); *Dempsey v. Atchison, Topeka and Santa Fe Railway Company,* 16 F.3d 832, 836 (7th Cir.1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir.1999); *Oates v. Discovery Zone,* 116 F.3d 1161, 1165 (7th Cir.1997). A fact is material if it is outcome determinative under applicable law. *Wollenburg v. Comtech Manufacturing Co.,* 201 F.3d 973, 975 (7th Cir.2000); *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir.1999); *Estate of Stevens v. City of Green Bay,* 105 F.3d 1169, 1173 (7th Cir.1997). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Thomsen v. Romeis,* 198 F.3d 1022, 1026–27 (7th Cir.2000); *Plair v. E.J. Brach & Sons, Incorporated,* 105 F.3d 343, 346 (7th Cir.1997); *Dempsey,* 16 F.3d at 836. Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.,* 21 F.3d 146, 148 (7th Cir.1994). *See also Miller,* 168 F.3d at 312; *Plair,* 105 F.3d at 347; *United Association of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1268 (7th Cir.1990). *Cf. Hong v. Children's Memorial Hospital,* 993 F.2d 1257, 1261 (7th Cir.1993); *Lac du Flambeau Indians v. Stop Treaty Abuse–Wisconsin, Inc.,* 991 F.2d 1249, 1258 (7th Cir.1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also: Reeves v. Sanderson Plumbing Products, Inc.,* —— U.S. ——, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000); *Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); *Bellaver,* 200 F.3d at 492; *Haefling,* 169 F.3d at 497–98.

### II. Preemption of the Plaintiffs' Claim that the Defendants Provided Inadequate Warning Devices

Turning first to the question of federal preemption, the defendants contend that Indiana tort law with respect to the adequacy of the warning devices at C.R. 400 N is preempted by the Federal Highway Safety Act of 1973, 23 U.S.C. § 130 *et. seq.,* and regulations promulgated thereunder. Among the provisions of the FHSA, Congress has established the Federal Railway–Highway Crossings Program in an effort to provide federal funds to participating states for the "cost of construction

of projects for the elimination of hazards of railway-highway crossings." *Norfolk Southern Railway Company v. Shanklin,* — U.S. —, 120 S.Ct. 1467, 1471, 146 L.Ed.2d 374 (2000) (*quoting* 23 U.S.C. § 130(a)). Participation in the Crossings Program requires that the participating state must "conduct and systematically maintain a survey of all highways to identify those railroad crossing which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. § 130(d). Under the statute, this schedule at least must provide signs for all railway-highway crossings. *Shanklin,* — U.S. at —, 120 S.Ct. at 1471.

In administering the Crossings Program, a number of regulations have been implemented addressing the design of grade crossings. *Shanklin,* — U.S. at —, 120 S.Ct. at 1471. *See, e.g.,* 23 C.F.R. § 646.214(b). Under 23 C.F.R. §§ 646.214(b)(3) and 646.214(b)(4), the Federal Highway Administration has set requirements for warning devices at railway grade crossings. *Shanklin,* — U.S. at —, 120 S.Ct. at 1472. These regulations establish what constitutes an adequate warning device for projects installed with federal funds. Automatic gates and warning lights are required as adequate warning devices for crossings which involve the following conditions: multiple main line railroad tracks, multiple tracks in the vicinity where one train might obscure the movement of another train, high speed trains combined with limited sight distances, a combination of high speeds and moderately high volumes of highway and railroad traffic, the use of the crossing by substantial numbers of school buses or trucks carrying hazardous materials, or where they are recommended by a diagnostics team. 23 C.F.R. § 646.214(b)(3); *Shanklin,* — U.S. at —, 120 S.Ct. at 1472. For railway crossings not meeting any of these conditions, "the type of warning device to be installed, whether the determination is made by a state regulatory agency, and/or the railroad, is subject to

the approval of FHWA." 23 C.F.R. § 646.214(b)(4).

The Supreme Court previously has ruled that these regulations preempt state tort law on matters covering the same topic where warning devices actually have been installed using federal funds. *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 670, 113 S.Ct. 1732, 1741, 123 L.Ed.2d 387 (1993). This preemption includes any claims under state tort law that a grade crossing is extra-hazardous and that the warning devices provided at the crossing are inadequate. *Shanklin,* — U.S. at —, 120 S.Ct. at 1477. In *Shanklin,* the plaintiff's decedent was fatally injured when he attempted to cross a grade crossing and his car was struck by an oncoming train. The crossing did not provide automatic gates or flashers, but instead it was equipped with reflectorized crossbucks similar to the one at issue in the present case. The crossbucks were installed as a part of the Crossings Program which affected a total of 196 crossings throughout the state. The project was approved by the FHWA, and the warning devices were paid for almost exclusively with federal funds. *Shanklin* concluded that state tort law was displaced on the subject because 23 C.F.R. §§ 646.214(b)(3) and 646.214(b)(4) established a federal standard of adequacy for the devices. *Shanklin,* — U.S. at —, 120 S.Ct. at 1476. As noted in *Shanklin,* preemption occurred "[o]nce the FHWA approved the project and the signs were installed using federal funds ...." *Shanklin,* — U.S. at —, 120 S.Ct. at 1477.

The facts in *Shanklin* are controlling in the present case, and the plaintiffs' claim regarding the adequacy of warning devices is preempted. According to the uncontroverted affidavit of Randall Frederick, the Principal Engineer of Public Improvements at CSX, the crossing at issue has been equipped with reflectorized crossbucks installed with federal funds through the Crossings Program. According to

Frederick, the State of Indiana and the predecessor to the defendant entered into a joint project to erect grade crossing warning devices in 1975. This project was approved by the FHWA in 1975. Accordingly, reflectorized crossbucks were erected at the crossing at issue, with 90 percent of the project being paid for with federal funds under the Crossings Program. The testimony of Frederick is consistent with evidence presented by the plaintiffs in opposition to summary judgment. The plaintiffs have presented the affidavit of Steven Hull, the Engineering Services Manager for the Indiana Department of Transportation. In his affidavit, Hull stated that a reflectorized crossbuck was installed in 1976 at the C.R. 400 N crossing with federal funds received as a part of a project approved by the FHWA. Because it is clear that the FHWA approved the project and federal funds were used to install the crossbucks, the plaintiffs' claim regarding inadequate warning devices is preempted as a matter of law.

■ Nevertheless, the plaintiffs advance a number of arguments that preemption is inapplicable. However, none of these arguments are tenable in light of the Supreme Court's decision in *Shanklin*, and each must be rejected. The plaintiffs first argue that the crossing never was submitted to the FHWA for approval, so preemption does not apply. In support of this contention, the plaintiffs note that Indiana generally does not use state funds to install crossbucks and that no plan ever was submitted to the FHWA for approval of the C.R. 400 N crossing. Even if this were true, however, it would have no impact on the issue of preemption.

Until recently, the Seventh Circuit did subscribe to the principle that preemption did not attach until the federal government expressly determined that the warning devices installed were adequate for safety. *See Shots v. CSX Transportation, Inc.*, 38 F.3d 304, 307–08 (7th Cir.1994). However, *Shots* has been abrogated by *Shanklin* to the extent that *Shots* required an individu-

alized determination of warning device adequacy before preemption attached. *See Shanklin*, —— U.S. at ——, 120 S.Ct. at 1475. Instead, the Supreme Court has decided to follow in the path of several other Circuits which have held that preemption attaches at the time federal funds are used to install warning devices, regardless of whether an express determination of adequacy has been made. *See Shanklin*, —— U.S. at ——, 120 S.Ct. at 1475. *See also Ingram v. CSX Transportation, Inc.*, 146 F.3d 858, 863 (11th Cir. 1998); *Armijo v. Atchison, Topeka & Santa Fe Railroad Co.*, 87 F.3d 1188, 1192 (10th Cir.1996); *Elrod v. Burlington Northern Railroad Co.*, 68 F.3d 241, 244 (8th Cir.1995). It is undisputed that crossbucks were installed at the C.R. 400 N crossing in 1976 and that they were installed almost exclusively with federal funds under a program approved by the FHWA. Once this occurred, federal law preempted any state law claim regarding the adequacy of the warning device at that particular crossing. *See Shanklin*, —— U.S. at ——, 120 S.Ct. at 1477.

■ The plaintiffs next argue that genuine issues exist as to whether the crossbuck located at C.R. 400 N on March 14, 1998, was the same crossbuck installed in 1976 with federal funds. This question is immaterial to the preemption question. Although it is important to the question of preemption whether federal funds actually were used to install a warning device, *see, e.g.*, *Easterwood*, 507 U.S. at 671–73, 113 S.Ct. at 1741–42, it is not important whether a substantially similar device later was installed at the same location using nonfederal funds. When addressing a similar issue, the Tenth Circuit has determined that the only situation where preemption arguably could be considered suspended or terminated would be where the Secretary of Transportation affirmatively abandoned the project and withdrew federal funding or allowed previously allocated funds to be spent at another site. *See Armijo*, 87 F.3d at 1192. *See also Shanklin*, —— U.S. at

——, 120 S.Ct. at 1476. Once the FHWA approves a crossing improvement and the warning devices are installed using federal funds, a federal standard of adequacy is established for that crossing, and state tort law is displaced on the topic. *Shanklin,* —— U.S. at ——, 120 S.Ct. at 1476. Whether the crossbuck installed at C.R. 400 N was the same crossbuck originally installed with federal funds in 1976 is immaterial because it clearly met the federal standard of adequacy established for that crossing by virtue of the earlier installation, and there is no evidence that the federal government ever withdrew from the project.

Finally, the plaintiffs assert that the defendants are estopped from asserting the preemption defense because they assumed an independent contractual duty for the railroad crossing. There is no merit to this argument. *Shanklin* and prior cases are clear that one of the effects of preemption is to absolve the railroad of state tort liability. *Shanklin,* —— U.S. at —— – ——, 120 S.Ct. at 1476–77 (noting the dissent's criticism of the majority opinion as providing a double windfall to railroads by allowing the federal government to pay for warning devices but absolving railroads of tort liability). The Supreme Court clearly stated that "[w]hat states cannot do—once they have installed federally funded devices at a particular crossing—is hold the railroad responsible for the adequacy of those devices." *Shanklin,* —— U.S. at ——, 120 S.Ct. at 1476. *Shanklin* is clear, and there is nothing to support the plaintiffs' theory that a contractual duty to maintain warning devices installed by a state with federal funds estops a railroad from asserting the preemption defense. For all of these reasons, the plaintiffs' claim regarding the adequacy of the warning devices at C.R. 400 N is preempted as a matter of law.

### III. *Contributory Negligence of the Plaintiff Under the Indiana Comparative Fault Statute*

The defendants also have moved for summary judgment on the plaintiffs' remaining claims on the basis that they are barred by the Indiana Comparative Fault Act. Indiana law provides that a plaintiff cannot recover if the plaintiff's comparative fault is greater than that of the other culpable parties. I.C. § 34–4–33–4. Although the degree of comparative fault normally is a question for the jury, a court may apportion fault "when there is no dispute in the evidence and the fact finder is able to come to only one logical conclusion." *McKinney v. Public Service Company,* 597 N.E.2d 1001, 1008 (Ind.App. 1992) (*quoting Robbins v. McCarthy,* 581 N.E.2d 929, 934–35 (Ind.App.1991)). The defendants contend that no reasonable jury could conclude that Cochran was less than 50 percent at fault in the March 14, 1998 incident. However, a review of the evidence reveals that a jury could reach more than one reasonable conclusion and summary judgment would be inappropriate. *See Johnson v. Consolidated Rail Corporation,* 797 F.2d 1440, 1444 (7th Cir. 1986) (applying Indiana law).

The plaintiffs have produced significant evidence in opposition to the defendants' motion in the form of expert testimony, an eye witness, and the affidavits of many community members familiar with the C.R. 400 N grade crossing. The plaintiffs first offer the testimony of Stephen Neese, a qualified expert in the area of accident reconstruction who has assisted in over 2,500 crash investigations and who has reconstructed and analyzed over 800 collisions. In reconstructing the accident involving Cochran, Neese observed the crossing where the accident occurred, took sight lines, and prepared scale diagrams. By using speed, time, distance, location, and sight line calculations based on available data, Neese was able to conclude that under the conditions existing at the C.R. 400 N crossing on March 14, 1998, no reasonable driver driving at a reasonable speed could have seen or heard the oncoming train which struck Cochran.

Neese's conclusion was based on a number of observations, calculations, and tests which he performed. After observing the scene of the accident, Neese noted that the view at the railroad right-of-way to the south, the direction from which the train was traveling, as less than 1,500 feet because of obstructions including trees, telephone poles, and an earthen berm created by the railroad. *Cf.* I.C. § 8–6.7–6–1 (stating that a railroad "shall maintain each public crossing under its control in such a manner that the operator of any licensed motor vehicle has an unobstructed view for fifteen hundred (1500) feet in both directions along the railroad right-of-way . . ."). Under the conditions at the time of the accident, Neese concluded that a motorist traveling 25 miles per hour would require between 114 to 132 feet to stop, which would equate to between 4.7 and 5.2 seconds. According to Neese, a motorist at 114 feet from the crossing could see only 55 feet of rail to the south and could not stop in time to avoid a train collision given the conditions surrounding Cochran's accident. Neese also conducted sound tests at the C.R. 400 N grade crossing. These tests revealed that an Amtrak train whistle would not have been audible to a motorist inside a car with the heater running until the train was 100 feet, or three seconds, from the crossing. Finally, Neese observed the slope and grade of the crossing itself, and concluded that inadequate drainage caused by a sloping of the grade permitted snow and ice to accumulate there even when the rest of the road was dry, further reducing the ability of a motorist to stop at the crossing.

Neese's testimony regarding the dangerousness of the crossing also is supported by the testimony of several community members who were familiar with the C.R. 400 N crossing. Several community members stated that they believed the crossing was dangerous because obstructions prevented a motorist from seeing or hearing an oncoming train until it was very near to the crossing. A postal carrier for Fair Oaks indicated that she avoided the C.R. 400 N crossing because she thought that it was dangerous. She also advised other postal workers to do the same prior to the March 14, 1998 incident. The superintendent of the local school system, Mitchell Ockerman, also was familiar with the C.R. 400 N crossing and had warned his school bus operators that the crossing was dangerous because of sight restrictions. The plaintiffs also have presented evidence of at least one near accident involving a school bus at the same crossing.

In addition to the above evidence, the plaintiffs also rely upon the testimony of Teanna Sutton, who observed Cochran's speed as she approached the grade crossing. Teanna estimated Cochran's speed as slightly more than that of someone walking. Teanna also observed that Cochran slowed as she approached the tracks, and she saw that Cochran's brake lights went on as she neared the crossing. Amtrak's conductor estimated Cochran's speed as being only 20 miles per hour in a speed zone of 55 miles per hour.

In their reply brief, the defendants contest the admissibility of some of this evidence but fail to provide any substantive argument in support of their objection. First, the defendants assert that Neese's tests regarding the train horn, as well as other evidence produced by the plaintiffs in opposition to summary judgment, is inadmissible because it is irrelevant. The defendants also assert in passing that issues involving the audibility of the train horn are preempted by federal law. The defendants further indicate their intention of filing a motion in limine to exclude this evidence at trial. However, the defendants do not present any arguments explaining why the evidence is inadmissible, nor do they move to strike it.

In general, a party must move to strike an affidavit that violates Federal Rule of Civil Procedure 56(e), and the failure to strike the exhibit results in a waiver of the objection in the absence of a gross miscarriage of justice. *Federal De-*

*posit Insurance Corporation v. Meyer,* 781 F.2d 1260, 1267 (7th Cir.1986). The mere assertion that a motion in limine may be filed at some future time is not adequate to remove documentary evidence from consideration in opposition to a summary judgment motion. Moreover, Neese's testimony regarding the train's horn bears directly on the plaintiff's statutory duty when approaching the grade crossing and is relevant to the issue of contributory negligence. For these reasons, the contested evidence will be considered.

■ In light of all the evidence presented by the plaintiffs, the defendants have not shown that Cochran was contributorily negligent as a matter of law. In an effort to demonstrate that Cochran was negligent *per se,* the defendants contend that she violated a number of Indiana statutes. The defendants first contend that Cochran violated I.C. § 9–21–8–39, which requires a person driving a vehicle to stop not less than 15 feet from a railroad crossing under certain circumstances. However, I.C. § 9–21–8–39 only applies in some instances, only two of which could be applicable here. First, a motorist is required to stop when a train approaching within 1,500 feet of a highway crossing emits an audible signal and because of speed or nearness to the crossing is an immediate hazard. I.C. § 9–21–8–39(3). Second, a motorist is required to stop when "an approaching train is plainly visible and is in hazardous proximity to the crossing." I.C. § 9–21–8–39(4). However, the plaintiffs have presented evidence supporting a conclusion that Amtrak's warning whistle was inaudible and that the train was not plainly visible to a reasonably prudent person because of visual obstructions. *Cf. Johnson,* 797 F.2d at 1444 (applying Indiana law and holding that the plaintiff motorist could not be held contributorily negligent as a matter of law when evidence existed that the plaintiff could not hear an approaching train and an expert testified that the plaintiff could not see the train because of the geography, weather, and lighting condi-

tions). Given the evidence produced by the plaintiffs, genuine issues exist regarding the applicability of I.C. § 9–21–8–39.

■ The defendants also have failed to demonstrate, as a matter of law, that Cochran violated her duty of driving too fast for conditions. Indiana law does state that a motorist may not "drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing." I.C. § 9–21–5–1. Indiana law also requires that the driver of a vehicle must drive at an appropriate reduced speed when approaching or crossing a railway grade crossing. I.C. § 9–21–5–4. The evidence suggests that Cochran may have been traveling between 20 and 25 miles per hour before the collision. There also is evidence that Cochran slowed her vehicle as she approached the grade crossing. Whether Cochran's speed was reasonable and prudent under the conditions and considering the totality of the circumstances surrounding the accident is a question for the jury. Similarly, whether Cochran approached the grade crossing at an appropriate reduced speed under the circumstances likewise is a question for the jury under these circumstances.

■ Finally, the defendants erroneously assert that Cochran had a general statutory duty to stop at the grade crossing. In support of this proposition, the defendants cite I.C. § 9–21–4–16 and quote extensively from *Thiele v. Norfolk & Western Railway Company,* 68 F.3d 179, 184–85 (7th Cir.1995). I.C. § 9–21–4–16 provides that "[w]hen a stop sign is erected at a railroad crossing, the driver shall stop within fifty (50) feet but not less than ten (10) feet from the nearest track of the grade crossing. . . ." In *Thiele,* an eyewitness observed the plaintiff go through a posted stop sign without stopping. In light of this and other strong evidence of contributory negligence, the court concluded that the plaintiff was contributorily negligent as a matter of law and that his claim was barred. However, in the present case

it is undisputed that there was no stop sign at the railroad tracks, only a crossbuck. Thus, the defendants' reliance on *Thiele* and I.C. § 9–21–4–16 to support their conclusion that Cochran's "failure to stop violated her statutory duty to stop and exercise due care before entering a railroad crossing," is a misstatement of Cochran's duty at the time of her accident. *See* Defendants' Memorandum in Support of Summary Judgment at p. 22.

In sum, the defendants have not demonstrated as a matter of law that Cochran was negligent in her common law or statutory duties in an amount greater than that of the defendants. Consequently, the defendants have not shown that Cochran's claim is barred by the Indiana Comparative Fault Act. As noted previously, however, the defendants have successfully demonstrated that the plaintiffs' claim regarding the adequacy of warning devices at C.R. 400 N is preempted by federal law and summary judgment is therefore appropriate as to this claim.

For the foregoing reasons, the Motion for Summary Judgment filed by the defendants, CSX Transportation, Inc., and National Railroad Passenger Corporation, a/k/a Amtrak, on April 28, 2000, is **GRANTED IN PART**. The plaintiffs' claim alleging that the C.R. 400 N grade crossing was extra-hazardous and that the defendants failed to post adequate warning devices is preempted as a matter of law. Therefore, the defendants' motion for summary judgment on this issue is **GRANTED**. The defendants' motion is **DENIED** in all other respects.