# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DAVID A. LOCKE**
Stuart & Branigin
Lafayette, Indiana

ATTORNEYS FOR APPELLEES:

**JAMES L. FARINA**
Hoey & Farina, P.C.
Chicago, Illinois

**ROBERT L. WRIGHT**
**BRADLEY A. BOUGH**
Wright Shagley & Lowery, P.C.
Terre Haute, Indiana

FILED

Dec 27 2012, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| INDIANA RAIL ROAD COMPANY, A Corporation, | ) ) ) | |
| Appellant-Defendant, | ) ) | |
| vs. | ) ) | No. 84A01-1202-CT-81 |
| JOHN BLAINE DAVIDSON, Administrator of The Estate of Carolyn Davidson, Deceased, and TONYA KINCAID, as Mother and Next Friend Of Cierra Kincaid, a Minor, | ) ) ) ) ) ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable David R. Bolk, Judge
Cause No. 84D03-1011-CT-10186

**December 27, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Indiana Rail Road Co., a Corporation (Indiana Rail Road), appeals the trial court's summary judgment in favor of John Blaine Davidson, Administrator of the Estate of Carolyn Davidson, deceased, and Tonya Kincaid, as mother and next friend of Cierra Kincaid, a minor (collectively, Appellees), with respect to Indiana Rail Road's claim that Appellees' cause is preempted by federal law.

We affirm.

## ISSUE

Indiana Rail Road raises two issues on appeal, one of which we find dispositive and which we restate as follows: Whether the trial court erred in concluding that a genuine issue of material fact exists as to whether federal preemption applies with respect to the adequacy of the traffic warning devices installed at the Feree Drive railroad crossing in 2009.

## FACTS AND PROCEDURAL HISTORY

On June 5, 2009, Carolyn Davidson (Carolyn), together with her two minor granddaughters, was driving westbound on Feree Drive in Vigo County, Indiana. While she attempted to cross the railroad tracks, an Indiana Rail Road locomotive hit her vehicle, resulting in Carolyn's death and severe injuries to one granddaughter. At the time of the collision, the Feree Drive railroad crossing was equipped with reflectorized crossbuck signs that had been installed in 2009, prior to the accident.

Reflectorized crossbuck signs were originally installed at the crossing in 1978 under a federally-funded project. The contract entered into between the State of Indiana

2

and Indiana Rail Road's predecessor, the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (The Milwaukee Road), obligated the railroad to install crossbucks at the Feree Drive crossing, in compliance with federally-approved specifications governing the location of the crossbucks, and to maintain the crossbucks at the Milwaukee Road's expense. The Federal Highway Administration (FHWA) approved and certified the contract and its specifications for crossbuck placement and funded 90% of the installation costs.

On June 5, 2009, prior to the accident, Indiana Rail Road took down the crossbuck signs at the Feree Drive crossing. To fund the installation of new signs, Indiana Rail Road applied for and received State funds from the Indiana Department of Transportation (INDOT). As part of this 2009 project, INDOT required Indiana Rail Road "to complete the Project in accordance with the plans and specifications contained in its application which is on file with the State and is incorporated by reference." (Appellees' App. p. 45). Indiana Rail Road's application shows that it omitted incorporating the federal plans from Milwaukee Road's 1978 project as part of Indiana Rail Road's plans for the 2009 crossbuck project.

On November 23, 2010, Appellees filed their Complaint against Indiana Rail Road, alleging among others, that the Feree Drive grade crossing was extra-hazardous and had inadequate traffic warning devices. On October 4, 2011, Indiana Rail Road moved for partial summary judgment. On November 4, 2011, the Appellees responded. In their designated evidence, both parties agreed that no federal funds were used for the installation of the new crossbuck signs. On November 16, 2011, the trial court conducted

an argument on the motion for partial summary judgment and on December 23, 2011, the

trial court issued its Order, denying the motion and concluding, in pertinent part:

> In 1978 reflectorized crossbucks had been installed with federal funds under a project approved by the Federal Highway Administration. For purposes of this summary judgment it is undisputed that the reflectorized crossbucks were removed and new crossbucks installed at a different location at the crossing and were not installed with federal funds under a project approved by the Federal Highway Administration in 2009. If federal funds were used, federal law preempts state tort law on the adequacy of the warning devices. If no federal funds were used to replace this specific crossbuck, then state tort law is not preempted and [Appellees'] case can [move] forward. The [c]ourt finds that there is a genuine issue of material fact whether there were federal funds used to install the warning devices at the subject crossing on the date of the collision.

(Appellant's App. pp. 8-9).

On December 29, 2011, Indiana Rail Road requested certification of an

interlocutory appeal, which was granted by the trial court. On March 30, 2012, we

accepted the interlocutory appeal to the trial court's partial summary judgment.

Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of

material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial

Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in

the shoes of the trial court, applying the same standards in deciding whether to affirm or

reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d

604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine

4

whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiffs' claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id.*

## II. *Federal Preemption*

The Indiana Rail Road now contends that the trial court erred in denying its motion for partial summary judgment. Specifically, Indiana Rail Road claims that once federal funds have been applied in the installment of traffic warning devices at a particular railroad crossing, state tort law is preempted regardless of later changing circumstances and a railroad can no longer be held responsible for the adequacy of the traffic warning signs.

The Federal Railroad Safety Act (FRSA) was enacted in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. To aid in developing solutions to railroad grade crossing safety problems, the FRSA provides that the Secretary of Transportation "as necessary, shall prescribe regulations and issue orders for every area of railroad safety supplementing [existing] laws and regulations." 49 U.S.C. § 20103.

In 1973, Congress enacted the Highway Safety Act (HSA) which makes federal funds available to States to improve railroad crossings. As a prerequisite to receiving federal funds, the States must "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. § 130(d). Additional conditions on the States' use of federal funds to improve grade crossings are set out in regulations promulgated by the Secretary through the Federal Highway Administration (FHWA). *See* 23 C.F.R. §§ 646, 655, 924, 1204.

The FRSA specifically provides for preemption:

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106. The Supreme Court has held that "covering" is a restrictive term which indicates that Congress intended preemption to lie "only if the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transportation Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

6

Therefore, preemption will not lie unless it is "the clear and manifest purpose of Congress." *Id.*

In *Easterwood*, the Supreme Court addressed the preemptive force of the FRSA with respect to state warning device claims for accidents at grade crossings and held that, of all potential sources of preemption, only the regulations found at 23 C.F.R. sections 646.214(b)(3) and (4), when applicable, preempt state law because only those regulations establish actual requirements as to the installation of particular warning devices. *Id.* at 670. Subsections (b)(3) and (4) outline the types of warning devices deemed adequate for certain types of crossings. Subsection (b)(3)(i) mandates that:

> Adequate warning devices under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
> (A) Multiple main line railroad tracts.
> (B) Multiples tracts at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
> (C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.
> (D) A combination of high speed and moderately high volumes of highway and railroad traffic.
> (E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbusses or trucks using hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
> (F) A diagnostic team recommends them.

23 C.F.R. § 646.214(b)(3)(i). Subsection (b)(3)(ii) provides that "[i]n individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable." 23 C.F.R. § 646.214(b)(3)(ii). If the requirements of subsection (b)(3) are not applicable, then subsection (b)(4) applies to

7

federally-funded installations at railroad crossings that do not feature multiple tracks, heavy traffic, and the like. According to subsection (b)(4), "the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA." 23 C.F.R. § 646.214(b)(4). Stated succinctly, the Supreme Court held in *Easterwood* that state law is preempted only if either subsection (b)(3) or (b)(4) applies, and those subsections apply only if federal funds participated in the installation of traffic warning devices at a particular crossing.

Despite *Easterwood*, there remained a conflict in the circuit courts as to whether the FRSA, by virtue of 23 C.F.R. §§646.214(b)(3) and (4), preempted state tort claims concerning a railroad's failure to maintain adequate warning devices at crossings where federal funds had participated in the installation of those devices. Therefore, in *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 120 S.Ct.1467, 146 L.Ed.2d 374 (2000), the Supreme Court addressed once again the preemptive effect of the FRSA in conjunction with these regulations.

> When the FHWA approves a crossing project and the State installs the warning devices using federal funds, §§ 646.214(b)(3) and (4) establish a federal standard for the adequacy of those devices that displaces state tort law addressing the same subject. At that point, the regulation dictates the devices to be installed and the means by which railroads are to participate in their selection. It is this displacement of state law concerning the devices' adequacy, and not the State's or the FHWA's adherence to the standard set out in §§ 646.214(b)(3) and (4) or to the requirements of the [Manual on Uniform Traffic Devices for Streets and Highways] MUTCD, that pre-empts state tort actions. Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate is immaterial in the pre-emption question.

8

It should be noted that nothing prevents a State from revisiting the adequacy of devices installed using federal funds. States are free to install more protective devices at such crossings with their own funds or with additional funding from the FHWA. What States cannot do—once they have installed federally funded devices at a particular crossing—is hold the railroad responsible for the adequacy of those devices.

*Id*. at 357-58 (internal references omitted). Thus, *Shanklin* stands for the broader proposition that preemption attaches when federal funds are spent on any of the traffic control devices installed at the grade crossing. Once preemption attaches, a plaintiff's inadequate warning device claim against the railroad must be dismissed.

Here, the designated evidence reflects that the federal government approved and funded the installation of the reflectorized crossbucks in 1978. At that point in time, preemption attached with respect to the adequacy of the warning signs at the Feree Drive crossing. Sometime in 2009, Indiana Rail Road removed the federally-funded crossbucks. Prior to the accident, Indiana Rail Road installed crossbuck signs paid for by State funds at a different location at the crossing.

In support of its argument that preemption was still attached when the accident occurred on June 5, 2009, the Indiana Rail Road relies on established case law standing for the premise that preemption is not erased when federally funded warning devices are upgraded or replaced for maintenance reasons. The pivotal case standing for this proposition is *Cochran v. CSX Transportation, Inc*., 112 F. Supp. 2d 733 (N.D. Ind. 2000). Cochran was killed when her car was struck by a train while she attempted to cross a grade crossing. *Id*. at 735. Because it was unclear whether the crossbuck at the crossing was the same crossbuck installed twenty years earlier with federal funds,

9

Cochran asserted that a genuine issue of material fact existed as to whether preemption had attached. *Id.* at 739. The United States District Court stated:

> Although it is important to the question of preemption whether federal funds actually were used to install a warning device, it is not important whether a substantially similar device later was installed at the same location using non-federal funds. When addressing a similar issue, the Tenth Circuit has determined that the only situation where preemption arguably could be considered suspended or terminated would be where the Secretary of Transportation affirmatively abandoned the project and withdrew federal funding or allowed previously allocated funds to be spent at another site. Once the FHWA approves a crossing improvement and the warning devices are installed using federal funds, a federal standard of adequacy is established for that crossing, and state tort law is displaced on the topic. Whether the crossbuck installed at [the crossing] was the same crossbuck originally installed with federal funds in 1976 is immaterial because it clearly met the federal standard of adequacy established for that crossing by virtue of the earlier installation, and there is no evidence that the federal government ever withdrew from the project.

*Id*. at 738-39 (internal references omitted).

However, *Cochran* and its line of case law fails to identify the source of the non-federal funds and there is no evidence indicating that the replacement crossbucks, although placed in the identical location of the old signs, were installed as part of a subsequent state-funded project in which the railroad was obligated to reassess whether crossbucks provided adequate protection.

Not relied on by either party but nevertheless persuasive is the Texas Court of Appeals' decision in *Union Pacific R. Co. v. Cezar*, 293 S.W. 3d 800, 803 (Tex. Ct. App. 2009), which involved the collision between a freight train and a pickup truck at the Eddy Street crossing in Vinton, Louisiana on July 22, 2005. Earlier, in 1997, pursuant to a federal railroad crossing improvement program, the warnings at an adjacent railroad

crossing had been upgraded to include flashing lights and gates. *Id.* at 805. As part of this upgrade, Union Pacific closed the Eddy Street crossing and removed the existing warning signs. *Id.* at 804. In the summer of 1997, the State instructed Union Pacific to reopen the Eddy Street crossing and informed the railroad that "[t]he crossing will be reopened as a passive crossing with crossbucks (installed and maintained by your railroad) and stop signs (installed and maintained by the town)." *Id.* at 806. When the crossing was subsequently reopened in 1997, it was not protected by any warnings that activated to warn of an approaching train. *Id.* Asserting preemption, Union Pacific claimed it conclusively established that federal funds participated in the installation of the crossing's crossbucks prior to the collision. *Id.* at 812. In support of its argument, Union Pacific contended that the upgrade of the adjacent railroad crossing was a federally funded project, which included the closure of the Eddy Street crossing and that subsequently the FHWA was involved in the planning process to reopen the Eddy Street crossing "and was copied on the [Louisiana Department of Transportation's] letter authorizing the use of $10,000 in federal funds." *Id.* at 814.

The Texas Court of Appeals disagreed. Relying on *Easterwood* and *Shanklin*, the court characterized "the threshold question" as "whether [Union Pacific] conclusively established that federal funds participated in the installation of the crossbucks at the crossing." *Id.* After reviewing the entirety of the designated evidence, the court concluded that Union Pacific failed to meet its burden and did not establish its preemption defense as a matter of law. *Id.* at 815.

For instance, the grade crossing file does not reflect that federal officials inspected and approved the signalization for the project to reopen the crossing, or that federal officials approved or agreed to pay for the erection of crossbucks . . . Importantly, the crossing file also does not reflect that the State succeeded in utilizing federal funds previously approved for a project that encompassed closing the crossing to instead pay for the expenses incurred by [Union Pacific] to reopen it. Finally, while officials of the federal government were apparently notified of the plan to reopen the crossing as a passive crossing with crossbucks and stop signs, [Union Pacific's] grade crossing file does not reflect that federal officials approved its reopening without active warning devices.

*Id.*

Here, it is undisputed that federal funds participated in the installment of the original crossbucks in 1978 at the Feree Drive grade crossing. It is also undisputed that although the new crossbucks are of the same type as previously approved by the federal government, only state funds were involved in the installment of new crossbucks in 2009 and these new crossbucks were not placed in the exact same location at the crossing as their predecessors. In its application requesting state funds, the Indiana Rail Road neither included nor incorporated the federal specifications from the 1978 project. Because state funds were requested and granted, the Indiana Rail Road became responsible for assessing the crossing's safety needs pursuant to INDOT's regulations. There is no evidence indicating that the federal government approved the newly located crossbucks. In light of *Cochran* and *Cezar* and considering the totality of the designated evidence, we conclude that there is a genuine issue of material fact whether the federal government

affirmatively abandoned the project and federal preemption no longer applies to the Feree Drive railroad crossing.[1]

CONCLUSION

Based on the foregoing, we hold that the trial court properly denied the Indiana Rail Road's motion for partial summary judgment, concluding that a genuine issue of material fact exists as to whether federal preemption precludes Appellees' claim with respect to the adequacy of traffic warning devices.

Affirmed.

BAILEY, J. and CRONE, J. concur

---

[1] Because we affirm the trial court's denial of the Indiana Rail Road's motion for partial summary judgment based on the issue of federal preemption, we do not reach the merits of the parties' alternative argument which focused on whether 49 U.S.C. § 20106, as amended, applies to Appellees' allegations brought under the common law of negligence that the warning devices created an essentially local safety hazard, thereby saving Appellees' claim from federal preemption.