## HENRY, RECEIVER, *v.* HACK, ADMINISTRATOR.

[No. 7,774. Filed December 18, 1912. Rehearing denied March 13, 1913.]

1. APPEAL.—*Review.*—*Ruling on Motion for Judgment on Answers to Interrogatories.*—Whether the trial court erred in overruling a motion for judgment on the answers to interrogatories is to be determined from a consideration of such answers, the general verdict, and the pleadings tendering the issues of fact. p. 48.

2. TRIAL.—*General Verdict.*—*Scope.*—A general verdict for plaintiff is a finding that every material averment of the complaint was proved. p. 49.

3. TRIAL. — *Verdict.* — *Answers to Interrogatories.* — *Control.* — A general verdict is not overcome by answers to interrogatories unless the latter are in such conflict with the former as to be irreconcilable upon any supposable state of facts provable under the issues. p. 49.

4. RAILROADS.—*Crossing Accidents.*—*General Verdict.*—*Answers to Interrogatories.*—Where, in an action for the death of plaintiff's decedent in a crossing accident, the complaint alleged facts showing that decedent's team had become frightened and had gotten beyond his control, and proceeded on the theory that the decedent was without fault in entering upon the track and that defendant's motorman either saw the peril of decedent in time to have prevented the collision by the exercise of ordinary care, or was guilty of original negligence in failing to discover and see decedent's peril, when by the exercise of reasonable care he should have done so, and that such negligence was the proximate cause of the death, answers to interrogatories showing that decedent was carried onto the track by his unruly horses, that freight cars on an adjacent steam road prevented the motorman from seeing decedent until he was less than fifty feet away, and that such motorman thereupon did all that he could to stop the car and avoid the injury, are not in irreconcilable conflict with a verdict for plaintiff, since they do not contradict the finding of the general verdict as to negligence in failing to see decedent's peril in time to have prevented the injury. p. 49.

5. RAILROADS.—*Crossing Accidents.*—*Unruly Team.*—*Look and Listen Rule.*—The look and listen rule applicable to the usual crossing cases, has no application where the entry upon the railroad track is due to a frightened team that has gotten beyond the driver's control, so that contributory negligence of a decedent, who was taken upon the track by an unruly team, is not necessarily shown by answers to interrogatories from which it does not appear that decedent stopped to look and listen. p. 54.

6. RAILROADS.—*Crossing Accidents.—Perilous Position.—Duty of Railroad Employe.—Negligence.*—Where decedent was without fault placed in a perilous position upon a railroad track, the fatal consequences of which could have been seen and prevented by the motorman in the exercise of ordinary care, but which were not seen by him in time, no amount of care exercised after he saw can excuse his failure to see the peril in time to prevent the injury that followed. p. 54.

7. RAILROADS.—*Crossing Accidents.—Notice of Peril.*—A railroad company, as well as a person crossing its tracks, are each charged not only with actual knowledge, but with such knowledge as may be acquired by the exercise of ordinary care. p. 55.

From Hancock Circuit Court; *Robert L. Mason,* Judge.

Action by George Hack, administrator of the estate of Henry G. Reasoner, deceased, against Charles L. Henry, receiver of the Indianapolis and Cincinnati Traction Company.

From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Cook & Cook* and *Claude Cambern,* for appellant.

*Jackson & Sample* and *Edward C. Eikman,* for appellee.

HOTTEL, J.—Appellee obtained judgment in the court below for $3000 damages for the death of Henry G. Reasoner, caused by a collision at a highway crossing over appellant's interurban tracks, from which judgment this appeal is prosecuted. A motion was made by appellant in the court below for judgment on the answers of the jury to interrogatories notwithstanding the general verdict, which was overruled and exceptions properly saved. The ruling on this motion is properly assigned as error and presents the only question relied on for reversal. This question is presented by

1. and determined from a consideration of such answers to interrogatories, the general verdict and the pleadings tendering the issues of fact, which, in this case, is a complaint in one paragraph and a general denial thereto. *Indiana R. Co. v. Maurer* (1903), 160 Ind. 25, 25 N. E. 156; *Consolidated Stone Co. v. Summit* (1899), 152 Ind. 297,

300, 53 N. E. 235; *Southern R. Co.* v. *Utz* (1913), 52 Ind. App. 270, 98 N. E. 375; *Indianapolis Southern R. Co.* v. *Emmerson* (1913), 52 Ind. App. 403, 98 N. E. 895.

Inasmuch as the only answer is a general denial the only pleading to be considered is the complaint, and appellee has in his favor the general verdict which is a finding that every material averment of such complaint was proven. The presumption indulged in favor of this general verdict, so frequently announced by the Supreme Court and this court, will not permit its overthrow by such answers to interrogatories unless there exists a conflict between the two, irreconcilable upon any supposable state of facts provable under the issues. *Ohio, etc., R. Co.* v. *Trowbridge* (1890), 126 Ind. 391, 398, 26 N. E. 64; *Shoner* v. *Pennsylvania Co.* (1892), 130 Ind. 170, 181, 28 N. E. 616, 29 N. E. 775; *Consolidated Stone Co.* v. *Summit, supra,* 304; *Southern R. Co.* v. *Utz, supra,* 378. It is contended by appellant that such conflict exists in two essential respects, one affecting the question of appellant's negligence and the other affecting the question of the contributory negligence of appellee's decedent.

The averments of the complaint important in determining whether such conflict exists are in substance as follows: that at the crossing in question it was necessary for a traveler on said highway going north before crossing appellant's track to pass over the tracks of the Cincinnati, Hamilton and Dayton Railway Company and its switch, both lying on the south of appellant's track; that on said day about the hour of 11 a. m., appellee's intestate, was driving a wagon drawn by two horses, and when about to cross appellant's track at said crossing, stopped to permit a car on appellant's track going east to pass him, and also waited for an east-bound train on the track of the Cincinnati, Hamilton and Dayton Railway to pass; that immediately after said train of cars going east passed, intestate's horses,

which he had driven in a prudent manner, became frightened and unmanageable and started across the tracks of appellant and while they were so unmanageable, ran intestate's wagon upon said track; that at that time appellant was running a car in a westerly direction on said track at a high and dangerous rate of speed, fifteen miles per hour, approaching said crossing; that intestate and his horses and wagon were in plain view of the agents of appellant in charge of said car for a distance of over 200 feet, when intestate was about to approach the track of the appellant, and appellant's servants saw, or, in the exercise of reasonable care, could have seen decedent and his horses and wagon and could have seen that intestate's horses were frightened and unmanageable and about to enter upon the track of appellant, or that they were upon the track, or so close thereto, that the car could not pass without striking them, and that intestate could not extricate himself from said dangerous position, nor from his wagon, and that he could not remove his horses from said track in time to avoid a collision; that appellant's motorman and servants in charge of said car saw or could have seen, in the exercise of ordinary care, intestate's peril in time to have avoided a collision, and stopped the car which they negligently and carelessly failed to do; that said car was equipped with air brakes and all modern appliances; that said servant of appellant did not have said car under control, but carelessly and negligently ran it without having it under control; "that in failing to see or take due notice of what they could have seen in the exercise of ordinary care, or seeing the dangerous condition and peril of said intestate, and failing to get said car under control, and failing to check or stop the same, said appellant carelessly, negligently and recklessly and in total disregard of intestate's peril, by its agents and servants aforesaid, ran its said car at a high and dangerous rate of speed against and upon this intestate and his horses and wagon; that at this time intestate was unable to get his horses and wagon from the track so as to avoid

a collision with said car which the motorman well knew, or could have known in the exercise of reasonable or ordinary care; that said car struck said intestate with great force and violence and caused his death immediately, all of which was due to the carelessness and negligence of said appellant and without any fault on the part of this intestate.''

The interrogatories answered by the jury set out in narrative form are in substance as follows: Appellee's intestate, Henry G. Reasoner, was killed by a car on appellant's traction line about 11 o'clock, August 8, 1908, at a highway crossing about one-third mile west of New Palestine, Indiana. Appellant's traction line at said crossing parallels the Cincinnati, Hamilton and Dayton Railway Company's track and runs forty-nine feet and six inches north of the side track. At said point appellant's traction line and said railroad tracks all run about east and west and the highway on which appellee's decedent, was killed, while traveling north thereon, at said point runs north and south. The decedent had lived about one-fourth mile north of said crossing for about seven years, had crossed it frequently, was acquainted with it and knew the location of said railroad tracks and traction line at said point. There was a large number of freight cars standing on said side track on each side of said highway extending from said highway east to a point about opposite the passenger station of said railroad. Decedent was driving two horses hitched to a wagon on which there was a hay-frame. Decedent had owned and used these horses for about seven years and had frequently driven them over said crossing and between said freight cars. At the time he was killed decedent was about thirty-two years of age, had good sight and hearing, and was then familiar with the location of said freight cars and acquainted with the running of cars on appellant's traction line at said crossing. He was killed by a west-bound car which had stopped at New Palestine to take on and discharge passengers, and said car approached said crossing on schedule time running about

25 miles an hour. The motorman in charge of said car blew the whistle for said crossing. The car weighed about 50 tons and was equipped with air and hand brakes which were in good order. The line of freight cars prevented the motorman from seeing decedent or his wagon and team until they had crossed said railroad track and had passed from between said freight cars. The team was less than 50 feet from the traction line when the motorman first saw it, and at that time one of the horses was going in a fast trot and the other in a gallop towards said crossing, and the motorman then immediately applied the brakes, reversed his car and did all in his power to stop it, and brought it to a stop about 100 feet west of the crossing. The motorman attempted to stop his car immediately upon observing the peril of decedent. The decedent was looking toward the west from the time he drove past the box cars on said side track up to just before the time that his horses reached appellant's tracks.

We have set out in narrative form the substance of all affirmative answers to the interrogatories. The negative answers find in substance that the decedent did not drive his horses across the railroad side track in a trot and that the evidence *"was insufficient"* for the jury to say that the traction car was about 150 feet east of the crossing when the motorman first saw the team of decedent on the highway or what distance the car was away from the crossing when the motorman first saw the team, but that he could have seen the team when he was 200 feet away.

Appellant insists that "this case, under the averments of the complaint, naturally divides itself into two propositions, the first of which is that the motorman in charge of appellant's car saw the intestate's peril in time to stop the car and avoid the collision, but negligently and carelessly failed to do so. The other is that the decedent was himself without fault." It is then argued that the answers to interrogatories expressly find that the motorman immediately upon seeing the team and discovering the peril of the decedent did all

in his power to stop the car and prevent the injury to decedent, and that it must therefore follow that the general verdict cannot stand. Appellant makes its mistake in assuming that the only negligence charged against it is that its motorman saw the intestate's peril in time to have stopped the car and avoided the collision and that after seeing the peril of the decedent it negligently failed to do all it could to prevent the collision. This is not the only negligence involved in the charge. The complaint contains the additional charge that appellant's servants by the exercise of ordinary care could have seen, but negligently failed to see, appellee's peril in time to have prevented his injury. There is nothing in the answers to the interrogatories necessarily in conflict with such theory. While it may be true that these answers show that the motorman did all that he could do, to prevent the collision after he discovered the peril of the decedent there is no finding by the jury that necessitates the conclusion that the motorman, if he had had his car under proper control, by the exercise of proper care, might not have seen the peril of the decedent in time to have prevented the collision and the death that resulted. So far as is shown by the answers of the jury to the interrogatories, appellant's motorman may not have seen the decedent or his team until both the team and appellant's car were practically on the crossing, or so near thereto, that any effort then made to stop the car could not have prevented the collision. But the fact remains, as found by the jury, that such motorman could have seen such team when it was about 50 feet away from the crossing and when his car was 200 feet away. The jury evidently believed, as evidenced by its general verdict, that if the motorman had then seen and acted, that the collision would have been prevented. In the absence of contributory negligence on the part of the decedent in going upon the track, the finding that the motorman did all in his power after he actually saw the peril of decedent is not sufficient in view of the theory of the complaint above indicated. The

complaint does not proceed upon the last clear chance theory, but proceeds upon the theory that the decedent was without fault in entering upon the track and that appellant either saw the peril of the decedent in time to have prevented the collision by the exercise of ordinary care, or was guilty of original negligence in its failure to discover and see decedent's peril, when by the exercise of reasonable care it should have done so, and that such negligence was the proximate cause of the death of appellee's intestate.

It is next insisted that the answers to interrogatories show that appellee's intestate was guilty of negligence contributing to his injury. Under the averments of the complaint, appellee may have proven that the horses of the decedent, before, and at the time, they entered upon appellant's track, were frightened and unmanageable, and not within the control of the decedent, and that their entry upon the appellant's track was not due to any lack of effort or want of care on the part of the decedent in trying to prevent such entry. The general verdict is a finding that such facts were proven, and we find nothing in the answers to interrogatories necessarily inconsistent with this finding. The "look and listen rule" applicable to the usual crossing cases has no application where the entry upon the track is due to circumstances and conditions such as those above indicated.

The averments of the complaint in this case and the findings of fact distinguish it from the cases of *Wabash R. Co.* v. *Keister* (1904), 163 Ind. 609, 67 N. E. 521; *Kessler* v. *Citizens' St. R. Co.* (1898), 20 Ind. App. 427, 50 N. E. 891; and *Cleveland, etc., R. Co.* v. *Moore* (1909), 45 Ind. App. 58, 90 N. E. 93, relied on by appellant. In fact the reasoning of the court in those cases supports our conclusions in this case. In *Wabash R. Co.* v. *Keister, supra,* the court said at page 615: "But if the deceased was placed in a perilous position, he was so placed by his own negligence; and even if, after discovering his perilous situation,

he exercised ordinary care under that set of circumstances, as his own negligence brought him into such a situation, no amount of care thereafter used, if his own negligence resulted in the injury, would entitle appellee to recover in this action.'' Applying the same rule and reasoning to the person charged with negligently inflicting the injury, viz., to the appellant in this case, it necessarily follows that if appellee's decedent, without his fault, was in a place of peril, the fatal consequences of which the motorman, on appellant's car, by the exercise of ordinary care, could have seen and prevented, but which he was later unable to prevent because of his negligence in failing to observe and see in time, no amount of care exercised after he saw would excuse his lack of care in failing to see the peril in time to prevent the injury that followed. *Leavitt* v. *Terre Haute, etc., R. Co.* (1892), 5 Ind. App. 513, 31 N. E. 860, 32 N. E. 866; *Hilz* v. *Missouri, etc., R. Co.* (1890), 101 Mo. 36, 54, 13 S. W. 946. ''The law requires of every person that he shall exercise due care to avoid injury to others and to protect himself, and the vigilance required is always commensurate with the danger to be apprehended. The rule rests equally on those who are liable to inflict injury and those who are liable to suffer. Appellee's intestate was required to exercise the same vigilance to protect himself from injury that the appellant's servants were to avoid injuring him, and a failure to exercise such vigilance upon the part of either one would constitute negligence.'' *Lake Shore, etc., R. Co.* v. *Brown* (1908), 41 Ind. App. 435, 437, 84 N. E. 25.

It is also well settled that as a general rule in cases of this character both the plaintiff and defendant are each respectively charged not only with actual knowledge but also with such knowledge as he may acquire by the exercise of ordinary care. The general verdict of the jury is a finding that appellant was guilty of the negligence charged in the complaint and that appellee's decedent was without fault contributing thereto and we can-

not say that on these questions of fact there is irreconcilable conflict between such verdict and the answers of the jury to the interrogatories.

Judgment affirmed.

NOTE.—Reported in 100 N. E. 116. See, also, under (1) 38 Cyc. 1927; (2) 38 Cyc. 1860; (3) 38 Cyc. 1929; (4) 33 Cyc. 1142; 38 Cyc. 1927; (5) 33 Cyc. 1014; (6) 33 Cyc. 961; (7) 33 Cyc. 922. As to a railroad company's duty to one near to track and in peril from moving train, see 20 Am. St. 114; 82 Am. St. 158. As to the care a railroad company must exercise at highway crossings, see 26 Am. Rep. 207. On the question of fright of team as excuse for omission to look and listen at railroad crossing, see 21 L. R. A. (N. S.) 415. For a discussion of a frightened or unmanageable team as an excuse for contributory negligence at a railroad crossing, see 16 Ann. Cas. 954.