**Linda Galloway MENKE, Personal Representative of the Estate of Michael Ray Galloway, Deceased, Plaintiff-Appellee,**

v.

**The SOUTHERN RAILWAY COMPANY, Defendant-Appellant.**

No. 78–2243.

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1979.

Decided Aug. 17, 1979.

David R. Joest, Evansville, Ind., for defendant-appellant.

Daniel J. McGinn, Evansville, Ind., for plaintiff-appellee.

Before PELL, Circuit Judge, MOORE, Senior Circuit Judge,* and WOOD, Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff-appellee, Linda Galloway Menke as the personal representative of the estate of Michael Ray Galloway, initiated this wrongful death action in an Indiana state court against the defendant-appellant, Southern Railway Company (Southern). Galloway died when a train operated by Southern collided with the truck he was driving. The action was removed to the federal district court and tried before a jury, Southern now appeals from the judgment entered upon the jury's verdict in favor of the plaintiff. Southern raises three issues for our consideration.

(1) Is the Indiana Act, Ind.Code § 8–6–7.-6–1, upon which the plaintiff predicated one of her theories of negligence, so vague and uncertain that it deprives the defendant of due process?

(2) If the above Indiana Act is constitutional, did the trial court err by refusing to instruct the jury more specifically as to the duty the statute imposed on Southern?

(3) Did the trial court err by refusing to instruct the jury that to find that Southern breached its common law duty to maintain crossing signals, it must find that the railroad knew that the signal was not working properly?

We hold that the answer to each of these questions is no and affirm the judgment of the district court.

The accident occurred on March 31, 1975, at about 11:20 a. m. at a railroad crossing on state road 61 in Pike County, Indiana. At this particular crossing, Southern's right of way is fifty feet wide on each side of the tracks. Galloway was traveling north in a large truck hauling coal. He was driving at between five and fifteen miles per hour when the train, approaching the crossing from the east at approximately forty-five miles an hour, struck the cab of the truck. At trial, the plaintiff presented four different theories upon which the jury could have found that Southern was negligent:

(1) Southern's failure to sound a bell or whistle not less than 1320 feet before the crossing as required by Indiana law. Ind.Code § 8–6–4–1(a).

(2) Southern's failure to maintain the automatic signal devices (flashers) at the crossing in good working order.

(3) Southern's failure to maintain its right of way in a condition so that approaching motorists would have an unobstructed view for 1500 feet in both directions as required by law. Ind.Code § 8–6–7.6–1.

(4) Southern's operation of its train at an unreasonable and excessive speed.

Southern does not contest the sufficiency of the evidence to support any of these

---

* The Honorable Leonard P. Moore, United States Senior Circuit Judge for the Second Circuit, is sitting by designation.

theories, so we need not detail the evidence in great detail. It is sufficient to note that testimony as to whether the train's bell or whistle sounded and whether the flashers were functioning properly prior to the impact was conflicting. Evidence as to the range of unobstructed vision that an approaching motorist would have of the tracks at various distances from the crossing also differed. The evidence also presented a jury question on the issue of whether the train's speed was excessive. Thus, there was enough evidence to support any one of the four theories of the plaintiff and therefore the jury's general verdict in the plaintiff's favor.

### I.

The Indiana Act upon which the plaintiff based her claim that Southern breached its duty to clear obstructions from railroad crossings provides:

Unobstructed view at crossings. Each railroad in the State of Indiana shall maintain each public crossing under its control in such manner that the operator of any licensed motor vehicle has an unobstructed view for fifteen hundred (1,500) feet in both directions along the railroad right-of-way subject only to terrain elevations or depressions, track curvatures, or permanent improvements.

Ind.Code § 8–6–7.6–1. Southern maintains that the Act is void for vagueness because no reasonable person of ordinary intelligence could determine what the railroad's duty is. Southern concedes that the Act "contemplates that a motorist approaching a railroad [must] have an unobstructed view of 1500 feet of track in both directions," but argues that the statute "fails to specify *at what distance* from the track the motorist must have . . . an unobstructed view." It relies primarily upon two state court decisions which invalidated statutes which required motorists to slow down or stop at railroad crossings under certain conditions. *See Missel v. Oklahoma*, 33 Okl.Cr. 376, 244 P. 462 (1926); *Galveston, H. & S. Ry. v. Duty*, 277 S.W. 1057 (Tex.App.1925).

■ Southern apparently raises this issue for the first time on appeal. The plaintiff's answers to Southern's interrogatories and her pretrial specifications of negligence put the defendant on notice that the statute would be in issue. Nevertheless, the record before us contains no motion prior to trial questioning the constitutionality of the Act. Nor did Southern's motion for a directed verdict challenge the Act. Southern delayed until the jury instruction conference to complain that the statute was "vague, uncertain, and ambiguous." Yet, even there, as in its later motion for judgment n. o. v., it failed to argue specifically that the alleged vagueness contravened constitutional limitations and failed to present to the trial court precedent to support the argument it now makes before this court. We do not believe this is the proper way to raise a constitutional challenge to the validity of a statute. Under the circumstances we believe that defendant waived its constitutional objection. *See Stern v. United States Gypsum*, 547 F.2d 1329, 1333–34 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977).

■ Even if we treat the issue as properly raised, however, we do not believe that the Indiana Act is impermissibly vague. The defendant admits that the courts have been fairly tolerant of imprecise phrasing in economic and industrial regulations. *See, e. g., Boyce Motor Lines v. United States*, 342 U.S. 337, 72 S.Ct. 75, 96 L.Ed. 639 (1952); *Baltimore & Ohio Ry. v. Groeger*, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419 (1925). Nevertheless, in this case Southern seems to insist that due process requires "mathematical precision." In our view the language of the Act when considered against the background of its obvious purpose to protect motorists from hidden trains at rail crossings, its relation to other Indiana statutes, and the variety of conditions which may be present at railroad crossings, is reasonably clear, if not mathematically precise. Due process requires no more.

■ The Indiana Act provides that the motorist shall have an unobstructed view "along the railroad right-of-way." We read

the Act to say that the motorist must have the mandated view at the point where the highway intersects the edge of the railroad right of way.

Without a doubt the statute was enacted to prevent the very type of accident that claimed Michael Galloway's life in this case. The legislature intended to obligate the railroads to remove (subject to certain exceptions) all foliage and obstructions on the right of way which might impair a motorist's view of an oncoming train. The statute does not stand alone. It should be read in conjunction with Ind.Code § 9–4–1–106 which also seeks to prevent crossing collisions. That section requires motorists to stop within fifty to ten feet before the railroad tracks and to remain stationary when "an approaching train is plainly visible and is in hazardous proximity to such crossing." The two statutes, read together, indicate the legislature's goal of affording the motorist an unobstructed view of the tracks so that he may avoid approaching trains.

Of course, the railroad can only be held responsible for obstructions within its control.[1] We think this idea is implicit in the statute which applies only at those public crossings within the railroad's control. Ind. Code § 8–4–1–14 provides that the railroad's right-of-way shall not exceed "six rods" in width or, in simpler terms, approximately one hundred feet. Thus, while the width of the right of way in question is typical of most Indiana crossings, the widths of a railroad's land may vary from one crossing to the next. The angle at which a highway crosses a railroad track may also vary. These circumstances make pinpointing the exact vantage point at which the motorist should be able to see 1500 feet in both directions difficult. We hold that the statute is not impermissibly vague and therefore that it falls within the flexible limits which the due process clause imposes on the exercise of legislative power.

## II.

Southern's second argument is that the instruction to the jury was erroneous and prejudicial because it failed "to specify any particular distance from the rail from which there must be [a] view for 1,500 feet." Southern maintains that it was error for the trial court to repeat essentially the language of the Indiana Act when its meaning and application to the facts were in doubt.

■ This court has previously expressed its opinion that "[t]he setting forth of instructions in statutory language is a practice which is not to be commended." *La Presti v. Goodall Oil Co.*, 290 F.2d 653, 655 (7th Cir. 1971). *See also Pritchard v. Liggett & Myers Tobacco Co.*, 350 F.2d 479, 487 (3d Cir. 1965), *cert. denied*, 382 U.S. 987, 86 S.Ct. 589, 15 L.Ed.2d 475 (1966) (concurring opinion); *Williams v. Powers*, 135 F.2d 153, 157 (6th Cir. 1943). On the other hand, "[i]n itself there is nothing improper in charging a jury in the language of a statute, when one of the issues in the case is whether the statute was breached." *Merchant's Fast Motor Lines, Inc. v. Lane*, 259 F.2d 336, 338 (5th Cir. 1958). Thus, as with other matters concerning the form of instructions, whether to instruct the jury in the language of the relevant statute is generally a matter left to the discretion of the trial judge. Here, the trial court quoted the provisions of Ind.Code § 8–6–7.6–1 along with those of several other statutes relied on by the defendant as well as the plaintiff. Under the circumstances we do not regard the trial court's reliance upon the statutory language to be prejudicial to the defendant.

Southern apparently tendered no instruction to clarify what it regarded as the ambiguity nor has it suggested to this court how the alleged error could have been corrected without unnecessary comment upon the evidence. Southern points to evidence in the record which showed that at a distance of thirty-five feet from the tracks, a motorist would have had the required 1,500 foot

---

1. The jury was so instructed. The trial court's instruction number 30 provided in pertinent part: "The defendant has no control over, and no responsibility for, obstructions of view which are located off the railroad right-of-way."

view. But this evidence, even if true, does not tend to establish that Southern complied with the Indiana Act as we have construed it above, since in view of the width of the right of way in this case the Act required an unobstructed view from at least fifty feet from the tracks. Southern's real complaint seems to be that it was deprived of the opportunity to have the jury instructed on an erroneous view of the law. The jury was instructed that "[t]he presence of an obstruction on the railroad right-of-way is not negligence in itself." We do not believe that the instructions considered as a whole misled or confused the jury nor that the trial court's instruction on Southern's statutory duty prejudiced its substantial rights.

### III.

■■■ Southern's third and final argument is that the jury instruction which addressed Southern's duty to maintain crossing signals erroneously permitted the jury to find Southern liable for a defective condition of which it had no knowledge. The court instructed the jury that if the signals operated improperly "by reason of the failure of defendant's employees to keep and maintain the automatic electric flasher signal lights device at such crossing in proper working order," Southern could be found negligent. Negligence was defined as "the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done. In other words, negligence is the failure to exercise ordinary care." Southern argues that by failing to specify that knowledge of the malfunctioning flashers was essential to a finding of negligence, the trial court misinformed the jury as to Southern's common law duty under Indiana law.

Southern relies on two old Indiana appellate court decisions for its view of Indiana law. *See New York, Chicago & St. Louis R. R. v. Laudenslager*, 127 Ind.App. 301, 141 N.E.2d 255 (1957); *Lake Erie & Western R. R. v. Howarth*, 73 Ind.App. 454, 127 N.E.

804 (1920). The rule which it would have us draw from these cases is set forth in 24 Indiana Law Encyclopedia, Railroads § 137 at 257–58 (1959):

A railroad company which installs automatic warning signals at a crossing has the duty to use due care in seeing that the signals operate properly. The failure of automatic bells or warning lights, placed at a railroad crossing to signal approaching trains, to ring or flash at the time of an accident is evidence of negligence, but to charge a railroad company with negligence in this matter, it must be shown that the company had knowledge of the defective signal, and that the traveler did not know that the signal was out of repair.

Although neither *Laudenslager* nor *Howarth* was actually decided on this ground, we would be tempted to find merit to Southern's objection had not subsequent Indiana decisions undercut them. In *New York, Chicago & St. Louis R. R. v. Henderson*, 237 Ind. 456, 146 N.E.2d 531 (1957), decided after *Laudenslager*, the Indiana Supreme Court held that evidence of the failure of signals to work alone raised an inference of the railroad's negligence:

[W]here it is shown that signalling devices or a safety gate at the crossing did not operate, the doctrine of *res ipsa loquitur* is applicable to the extent that the jury may draw a permissible inference of negligence by reason of the failure of such devices to operate properly which were under the exclusive care and control of the Railroad Company.

*Id.* at 472, 146 N.E.2d at 541. At least one intermediate Indiana court has expressed its opinion that *Henderson* implicitly overruled the earlier line of Indiana cases. *Stazinski v. New York Central R. R.*, 140 Ind. App. 234, 239, 220 N.E.2d 537, 539 (1966) (*Howarth* represents "the older view of the law"). We are bound to apply Indiana substantive law as that state's supreme court would were it considering the issue, *see Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), and we believe that the cases relied

on by the defendant are not now good law in Indiana. We do not mean to suggest that a defendant's knowledge of the malfunction is irrelevant or that railroads are to be held strictly liable for the failure of warning signals to operate. We only hold that the defendant's knowledge is only one of the factors to be considered in determining whether he exercised due care under the circumstances. A railroad may be held responsible not only for what it knew, but also for what in the exercise of reasonable diligence it should have known. There is evidence in the record sufficient to support a finding that Southern's employees failed to exercise due care in inspecting and maintaining the crossing signals. The jury could reasonably have found that Southern was chargeable with constructive knowledge of the defect. *See Henry v. Hack,* 53 Ind.App. 47, 100 N.E. 116 (1912). We hold there was no error in failing to instruct the jury that knowledge of the malfunction was essential to a finding that the railroad was negligent.

The defendant has failed to establish any basis for overturning the jury's verdict. The judgment upon that verdict must be

AFFIRMED.