**FIFTH THIRD BANK, by and through Cynthia Bozik, Trust Officer, as Special Administrator of the Estate of Kacie Bechard, Deceased, Sheryl M. Bechard, and Stephen Bechard, Plaintiffs,**

v.

**CSX CORPORATION, a corporation; CSX Transportation Corp., a corporation; Newton County Highway Department, and Newton County, by and through its Board of Commissioners, State of Indiana, Indiana Department of Transportation, and National Railroad Passenger Corporation, a/k/a Amtrak, Defendants.**

Civil No. 4:02–CV–0009 AS.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 23, 2004.

Bryan L. Bradley, Kenneth J. Allen, Michael T. Terwilliger, Kenneth J. Allen and Associates PC, Valparaiso, IN, for Plaintiffs.

Harold Abrahamson, Abrahamson and Reed, Hammond, IN, Bruce Phillip Clark, Timothy M. Swan, Bruce P. Clark and Associates, Munster, IN, Patrick K. Ryan, Blaney Casey and Walton, William F. Sammons, Sammons Law Office, Morocco, IN, Edward M. Kohan, Indiana Attorney General, Indianapolis, IN, for Defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The Defendants, Newton County Highway Department and Newton County ("Newton County"), on or about August 29, 2003, moved for summary judgment alleging no genuine issues as to any material fact exist in this matter. On or about December 23, 2002, Defendants, CSX Transportation Corporation, and National Railroad Passenger Corporation, a/k/a Amtrak ("the Railroad"), filed a motion for partial summary judgment. Following such, on or about September 5, 2003 the Railroad filed a revised motion for summary judgment. This Court heard oral

argument in this matter on January 20, 2004 in Lafayette, Indiana.[1]

## I. BACKGROUND

This case arises out of a collision between a car operated by Sheryl Bechard and a National Passenger Railroad Association d/b/a Amtrak train. The accident occurred on January 13, 2000, at approximately 9:45 a.m., on County Road 400 East ("C.R. 400 East") at a railroad grade crossing owned and maintained by Defendant, CSX Transportation Corporation, just north of Monon road in Lincoln Township, Newton County, Indiana. Kacie Bechard was a passenger in the vehicle driven by Sheryl Bechard. Ms. Bechard was traveling in a southerly direction on C.R. 400 East at or near its intersection with the railroad crossing while the Amtrak train was headed in an northwesterly direction over said crossing. Sheryl Bechard's decedent Kacie Bechard, a passenger, sustained injuries resulting in her death on January 16, 2000.

At the time of the collision, the railroad crossing in question was owned, operated, managed, controlled and maintained by co-defendants, CSX Corporation and CSX Transportation Corporation. Newton County maintained, managed and controlled County Road 400 East. At the time of the accident, the C.R. 400 East crossing was marked by advanced warning signs and reflectorized crossbuck signs facing northbound and southbound traffic. Crossbucks are white crisscrossed boards with the words "RAILROAD CROSSING" in black lettering.

On or about April 2, 1975, the State of Indiana and the Louiseville & Nashville Railroad, the Railroad's predecessor, entered into an agreement to install crossbucks at the Railroad's crossings. During the deposition of Steven Hull, Hull produced several documents which undoubtedly established that federal funds were spent on a warning device at the crossing in question, which has not been disputed by the Bechards. There is an inventory form dated June 29, 1976, that indicates at that time the crossing had two reflectorized crossbucks. Accordingly, reflectorized crossbucks were erected at the crossing at issue with ninety percent of the project being paid for with federal funds under the Crossings program.

The Bechards allege that Newton County, a governmental entity, had a duty of care and caution toward the CSX grade crossing where the collision occurred. The Bechards claim the grade crossing in question to be extra-hazardous and unreasonably dangerous, and allege that Newton County failed to maintain adequate protections and warning at the CSX crossing, and failed to maintain an unobstructed view for 1,500 feet along the railroad right-of-way. The Bechards also seek damages under Indiana law for injury and wrongful death caused by the Railroad's alleged failure to exercise reasonable care to protect the public at its grade-crossing and to remove sight-line obstructions on its right-of-way at C.R. 400 East.

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists

---

1. There are also two other pending motions in this matter that were addressed at the hearing held on January 20, 2004, which will be discussed herein. The two pending motions are a motion filed by the Railroad Defendants to strike the affidavit of William Berg, as well as a motion by the Railroad Defendants to strike the Plaintiffs' statements regarding Ms. Bechard's ability to recall events prior to the collision due to a head injury, or in the alternative, declare Sheryl Bechard incompetent to testify at trial. At the hearing on January 20, 2004, Defendants, Newton County, joined in these two motions filed by the Railroad.

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir.1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir.1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir.1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. 2505. Applying the above standard this Court will now address the present motion for summary judgment.

## III. DISCUSSION

### A. NEWTON COUNTY

#### 1. Obstruction of View Claim

The Bechards claim that Newton County had a duty to prevent obstruction, including the condition of vegetation, on its right-of-way along C.R. 400 East. Newton County first argues that there is no evidence that this duty, to clear vegetation, fell upon Newton County as the statute specifically names two other parties responsible for inspection. *See,* I.C. Section 32–26–4–2. It should be noted that to the extent the Bechards are attempting to hold Newton County liable for any loss which resulted from vegetation of the private land owner's property or the Railroad's right-of-way, Newton County is immune from such. *See,* I.C. Section 34–13–3–3(11). Newton County however, admittedly, is responsible for clearing overgrowth of vegetation in its right-of-way, which is approximately twenty feet on each side of the C.R. 400 East.

Ms. Bechard claims that her view of the oncoming train was obstructed as she approached the crossing at C.R. 400 East. She further alleges that the conditions depicted in photographs provided by Newton County which were submitted by CSX, taken of the scene sometime after the accident, did not accurately depict the condition of the area around the crossing on the date of the accident.[2] However, Ms. Bech-

2. The accident in this matter occurred on January 13, 2000 at approximately 9:45 a.m.

ard could not identify anything that was wrong with the photographs. She did not in any way identify why or in what manner the photographs were different from the accident site.

Newton County claims that on the day of the collision, there were no obstructions or overgrowth of vegetation on the county road right-of-way. Newton County has provided the aforementioned photographs submitted by CSX in response to Request for Production of Documents which they claim proves that there was not an obstruction of view. Newton County claims that it was Ms. Bechard's own conduct, rather than an obstruction of view that was the proximate cause of the accident in issue.

■ *Justice v. CSX Transp. Inc.*, 908 F.2d 119 (7th Cir.1990) is instructive in this matter. In *Justice*, it was held that a landowner's duty of care extends to avoiding the creation of visual obstacles that unreasonably imperil the users of adjacent public ways, even if the obstacle is wholly on his land and merely blocks the view across it. *Id.* at 124. In it, the Seventh Circuit reversed this District Court's judgment in favor of the adjoining landowner, finding no liability. Judge Posner, in the *Justice* decision held that "[s]o far as it appears from the limited record, had it not been for the obstruction, [Justice] would have seen the train and waited for it to pass before he tried to cross the tracks." *Id.* Contrary to the *Justice* case but in line with its holding, in the present matter, there is no basis in the record to conclude that had it not been for an alleged obstruction in Newton County's limited range of responsibility, Ms. Bechard would have seen the train and stopped. Newton

County, therefore, cannot be held responsible under a theory of an obstruction of view.

## 2. Failure To Maintain Signs Claim

■ The Bechards also claim that Newton County failed to demonstrate that its duty to maintain any and all signs, as well as pavement markings on the public road approach to the crossing was satisfied. However, there is no evidence and the Bechards do not even appear to assert that Newton County failed to maintain signs along the public road approaching the subject crossing. Nor is there any evidence or argument that the signs were damaged or missing at the time of the accident. In fact, Ms. Bechard testified to observing signs indicating that she was approaching a railroad crossing.[3] As for the Bechards' arguments concerning the pavement markings, such will be addressed in terms of Newton County's temporary condition defense.

## 3. Immunity Under the Indiana Tort Claims Act

### a. Temporary Conditions

■ Newton County claims that absence of railroad crossing marking was a temporary condition and the City is immune under the Tort Claims Act. Under I.C. Section 34–13–3–3(3), governmental entities are exempt from liability for losses caused by temporary weather conditions. Newton County claims that the absence of railroad crossing marking at or near the C.R. 400 East crossing was a temporary condition created by natural climactic conditions.

---

**3.** It should be noted at this time that the Bechards are claiming that due to the brain injury Ms. Bechard suffered as a result of the accident, her recollection of the facts surrounding the incident are unreliable. The Railroad Defendants have moved to strike this statement or in the alternative to declare Ms. Bechard incompetent to testify. Newton County has joined the Railroad Defendants' motion.

The Bechards claim however, that since Newton County cannot establish when the markings were last repainted, it cannot establish that its failure to repaint was due to the weather as opposed to mere negligence. In this instance, Newton County, has failed to establish that this was a temporary condition. Without evidence of when the railroad crossing marking at issue was last repainted, it is unrealistic to deem the fading of such as a temporary condition of the weather.

However, Ms. Bechard testified that she observed signs indicating that she was approaching a railroad crossing and further testified that she was familiar with the particular crossing at issue in this matter. Such testimony tends to show that any absence of pavement markings was not the proximate cause of the Bechards' injuries. While Ms. Bechard's testimony has been called into question, the record is wholly lacking any basis from which to conclude that Newton County's alleged failure to maintain pavement markings was the proximate cause or even significantly contributed to this accident. Therefore, in light of the record, Newton County cannot be held responsible on the alleged failure to maintain pavement markings.

### b. Discretionary Function

■ The Bechards allege that Newton County failed to maintain adequate warning signs at the crossing in question. Under the Indiana Tort Claims Act, a governmental entity is not liable for losses that result from the performance of discretionary functions. I.C. Section 34–13–3–3(7). Whether a particular act is discretionary and therefore immune is a question of law for determination by the courts. *Greathouse v. Armstrong,* 616 N.E.2d 364, 366 (Ind.1993). The policy behind governmental immunity is for governmental entities to perform their duties effectively and efficiently without judicial interference. *Peavler v. Bd. Of Comm'rs,* 528 N.E.2d 40,

44 (Ind.1988). To determine whether the governmental acts are discretionary and therefore immune from liability, the "planning operational" standard is applied. *Peavler* 528 N.E.2d at 45. Planning activities which are immune, are functions involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. *Id.*

■ In this case, the record reveals that in 1976, the State and Newton County had instituted the federally subsidized railroad upgrading program pursuant to the Highway Safety Act. The record further reveals that in late September 1999, the County made a decision to upgrade warning signs at certain railroad crossings in Newton County. Newton County argues that the Board of Commissioners' policy-oriented amendment of the Stop Sign ordinance in Newton County to improve warning signs at railroad crossings in Newton County, including the crossing at C.R. 400 East, is a discretionary act undertaken, obviously after conscious balancing of risks and benefits and accordingly Newton County is immune from liability as to the Bechards' claim of negligent failure to maintain adequate protections and warning at the C.R. 400 East crossing.

The Bechards allege that Newton County's proffered evidentiary support for discretionary function immunity is wholly lacking. The Bechards claim that the signs called for in the amended ordinance were not installed on the date of the accident and thus such amendment is completely irrelevant to the issue of immunity. The Bechards go on to claim that even if the amendment was relevant the minutes reflect that such did not fall within the factors enumerated in *Peavler.*

■ In this instance, the amendment was not a reactionary amendment in response to an accident, which distinguishes

this from the *Hanson* case relied on by the Bechards. *See, Hanson v. Vigo County Board of Comm'rs*, 659 N.E.2d 1123 (Ind.Ct.App.1996). The actual amendment to the ordinance occurred in the fall of 1999, prior to the accident. Furthermore, it has been held that the decision of the placement of stop signs is a matter of discretion, since the signing of streets and highways clearly requires judgment and discretion. *Bd. of Comm'rs of Harrison County v. Lowe*, 753 N.E.2d 708 at 714 (Ind.Ct.App.2001), *discussing City of Tell City v. Noble*, 489 N.E.2d 958 (Ind.1986). The decision to erect or not erect a traffic control device is discretionary and immune. *City of Tell City*, 489 N.E.2d 958. The decision concerning the amendment of the Stop Sign ordinance in Newton County to improve warning signs at railroad crossings in Newton County, including the crossing at C.R. 400 East, is considered a discretionary act. Thus, Newton County is entitled to discretionary immunity in terms of the decision to adopt such amendment.

### 4. Federal Preemption

■ The Bechards' claims against Newton County concern the adequacy of the warning devices at the subject railroad crossing. As such, possibly more persuasive than the previous arguments asserted by Newton County, is their final argument that the Bechards' state tort claims regarding warning devices, are preempted by federal regulations. The Bechards appear to argue that federal preemption is not available as a defense to any party besides the Railroad. However, no case law is cited in support of this bald assertion. While this Court agrees that railroads are often times the ones to rely on the defense of federal preemption in regards to warning adequacy claims, in this case, because the Bechards are attempting to hold Newton County responsible for the adequacy of the warning devices at the

subject crossing, in identical fashion to the Railroad in this matter, this Court does not see why Newton County should not be afforded the same affirmative defense. The Bechards contend that even if Newton County was entitled to assert the defense of federal preemption, the prerequisites of such have not been fulfilled.

In 1973, three years after passing the Federal Railroad Safety Act, Congress enacted the Highway Safety Act of 1973, § 203, 87 Stat. 283, which, among other things, created the Federal Railway–Highway Crossings Program. *See* 23 U.S.C. § 130. Congress has established the Federal Railway–Highway Crossings Program in an effort to provide federal funds to participating states for the "cost of construction of projects for the elimination of hazards of railway-highway crossings." *Norfolk Southern Railway Company v. Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000) (*quoting* 23 U.S.C. § 130(a)). Participation in the Crossings Program requires that the participating state must "conduct and systematically maintain a survey of all highways to identify those railroad crossing which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. § 130(d). Under the statute, this schedule at least must provide signs for all railway-highway crossings. *See, Shanklin*, 529 U.S. 344, 348, 120 S.Ct. 1467, 146 L.Ed.2d 374.

In administering the Crossings Program, a number of regulations have been implemented addressing the design of grade crossings. *Id. See, e.g.*, 23 C.F.R. § 646.214(b). Under 23 C.F.R. §§ 646.214(b)(3) and 646.214(b)(4), the Federal Highway Administration has set requirements for warning devices at railway grade crossings. These regulations establish what constitutes an adequate

warning device for projects installed with federal funds. Automatic gates and warning lights are required as adequate warning devices for crossings which involve the following conditions: multiple main line railroad tracks, multiple tracks in the vicinity where one train might obscure the movement of another train, high speed trains combined with limited sight distances, a combination of high speeds and moderately high volumes of highway and railroad traffic, the use of the crossing by substantial numbers of school buses or trucks carrying hazardous materials, or where they are recommended by a diagnostics team. 23 C.F.R. § 646.214(b)(3); *Shanklin*, 529 U.S. at 349, 120 S.Ct. 1467. For railway crossings not meeting any of these conditions, "the type of warning device to be installed, whether the determination is made by a state regulatory agency, and/or the railroad, is subject to the approval of FHWA." *Id.,see also,* 23 C.F.R. § 646.214(b)(4).

The Supreme Court previously has ruled that these regulations preempt state tort law on matters covering the same topic where warning devices actually have been installed using federal funds. *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 670, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The facts in *Shanklin* are controlling in the present case. The Court in *Cochran v. CSX Transportation Inc.,* 112 F.Supp.2d 733 (N.D.Ind.2000), which also cited to *Shanklin* as controlling, and with facts similar to ones before this Court, held that because it is clear that the FHWA approved the project and federal funds were used to install the crossbucks, any claim regarding adequacy of such warning devices is preempted as a matter of law. *Id.* at 738.

Nevertheless, the Bechards advance a number of arguments that preemption is inapplicable in this instance. It should be noted that the Bechards have conceded the fact that federal funds were expended in upgrading the crossing. However, the Bechards claim that Newton County cannot prove the remaining predicates to its preemption defense. Federal Preemption is an affirmative defense upon which defendant bears the burden of proof. *See, Fort Howard Paper Co. v. Standard Havens, Inc.,* 901 F.2d 1373, 1377 (7th Cir.1990).

The Bechards first argue that to enjoy the benefits of its preemption defense, Newton County must demonstrate that all federally required devices were in fact, installed. The Bechards claim that the warning devices were not installed based on the notion that the standards required two crossbucks facing each direction, and only one crossbuck was installed facing each direction at C.R. 400 East. However, under *Shanklin* whether or not the warning devices installed complied with the standards is irrelevant. *See, Shanklin* 529 U.S. at 355–357, 120 S.Ct. 1467. "Whether the state should have originally installed different or additional devices, or whether conditions at the crossing have since changed ... is immaterial to the preemption question." *Id.* at 358, 120 S.Ct. 1467. "[w]hat the States cannot do once they have installed federally funded devices at a particular crossing is hold the railroad responsible for the adequacy of those devices." *Id.*

The Bechards also claim that due to the fact that the warning device may have lost its reflectivity; the crossbuck is rendered inoperable and thus, Newton County is not entitled to federal preemption.[4] The

4. It should be noted that the accident in this matter occurred on January 13, 2000, at approximately 9:45 a.m.

Bechards rely on *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472 (8th Cir.1996), a pre-*Shanklin* decision which rejected a claim of federal preemption on the basis of the loss of reflectivity of the existing crossbucks. The rationale in *Kiemele* however, was implicitly overruled by *Shanklin's* holding that changes in conditions at the crossing are immaterial to the issue of federal preemption. "Whether the state should have originally installed different or additional devices, or whether conditions at the crossing have since changed … is immaterial to the preemption question." *Id.* at 358, 120 S.Ct. 1467.

▐ Finally, the Bechards argue that Newton County is not entitled to federal preemption in this matter because the evidence demonstrates that the warning device installed was not properly approved and did not meet the federal minimum requirements set out by the contract. Specifically, the Bechards argue that back-to-back crossbucks, facing southbound made of highly reflectorized material were not installed. Once it has been established that "the FHWA funded the crossing improvement and the warning devices are actually installed and operating, the regulation displaces state and private decision making authority by establishing a federal law requirement...." *Shanklin* 529 U.S. at 354, 120 S.Ct. 1467. Therefore the type of warnings used at any particular crossing are not scrutinized by "an individual determination of adequacy by a diagnostic team or FHWA official." *Id.* at 356, 120 S.Ct. 1467. Rather, the FHWA's approval of the entire program and the "comprehensive scope" of the regulatory scheme itself is what leads to preemption, not a crossing-by-crossing approval by the FHWA. *Id.*

None of the arguments asserted by the Bechards are tenable in light of the Supreme Court's decision in *Shanklin*, and each must be rejected. Until recently, the Seventh Circuit did subscribe to the principle that preemption did not attach until the federal government expressly determined that the warning devices installed were adequate for safety. *See, Shots v. CSX Transportation, Inc.*, 38 F.3d 304, 307–08 (7th Cir.1994). However, *Shots* has been abrogated by *Shanklin* to the extent that *Shots* required an individualized determination of warning device adequacy before preemption attached. *See, Shanklin*, 529 U.S. at 357–58, 120 S.Ct. 1467. Instead, the Supreme Court has decided to follow in the path of several other Circuits which have held that preemption attaches at the time federal funds are used to install warning devices, regardless of whether an express determination of adequacy has been made. *Id.*

▐ It is undisputed that crossbucks were installed at the C.R. 400 East crossing, and that they were installed almost exclusively (90%) with federal funds under a program approved by the FHWA. Once this occurred, federal law preempted any state law claim regarding the adequacy of the warning device at that particular crossing. *See, Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374. This Court is unaware of any reasoning or precedent to the contrary as to why such should not apply to the claims asserted by the Bechards against Newton County. Because this case is controlled and indiscernible from *Shanklin*, summary judgment on the issue of federal preemption, must be granted in favor of Newton County. Federal preemption is appropriate in this instance, thus preempting the Bechards' claims regarding the adequacy of the warning devices at the crossing at C.R. 400 East, Newton County. *See also, Randall v. Norfolk Southern Railway Co.*, 800 N.E.2d 951 (Ind.App.2003).

## B. THE RAILROAD DEFENDANTS

The Bechards also seek damages under Indiana law for injury and wrongful death caused by the Railroad's alleged failure to exercise reasonable care to protect the public at its grade-crossing and to remove sight-line obstructions on its right-of-way at C.R. 400 East. The Railroad, similarly, alleges any state tort claim with regard to warning devices is preempted under federal law and that its failure to clear vegetation and other obstructions at the crossing was not the proximate cause of the Bechards' damages.

### 1. Federal Preemption

The first issue is that of federal preemption. The Railroad contends that Indiana tort law, with respect to the adequacy of the warning devices at C.R. 400 East, is preempted by the Federal Highway Safety Act of 1973, 23 U.S.C. § 130 *et. seq.*, and regulations promulgated thereunder. This Court does not deem it necessary to reiterate the history of the Crossings Program as such was just discussed in the aforementioned section regarding Newton County's federal preemption defense. However, it should be noted that such is instructive in regard to the claims against these Railroad Defendants. The arguments posed by the Bechards against the Railroad are nearly identical to those offered against Newton County, therefore, a like analysis must be performed. Again, the *Shanklin* decision is controlling in terms of the Railroad Defendant's assertion of federal preemption.

As previously stated, the Court in *Cochran v. CSX Transportation Inc.*, 112 F.Supp.2d 733 (N.D.Ind.2000), which also cited to *Shanklin* as controlling, held that because it is clear that the FHWA approved the project and federal funds were used to install the crossbucks, any claim regarding adequacy of such warning devices is preempted as a matter of law. *Id.* at 738. Nevertheless, the Bechards, once again, advance a number of arguments that preemption is inapplicable in this instance. It should be noted that the Bechards have conceded the fact that federal funds were expended in upgrading the crossing. However, the Bechards claim that the Railroad cannot prove the remaining predicates to its preemption defense. Federal Preemption is an affirmative defense upon which defendant bears the burden of proof. *See, Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1377 (7th Cir.1990).

Generally, the Bechards put forth the same three arguments as they did against Newton County's assertion of federal preemption. Namely, that the required devices were not installed, were inoperable, and were not properly approved. The Bechards claim that the warning devices were not installed based on the notion that the standards required two crossbucks facing each direction, and only one crossbuck was installed facing each direction at C.R. 400 East. However, under *Shanklin* whether or not the warning devices installed complied with the standards is irrelevant. *See, Shanklin* 529 U.S. at 355–357, 120 S.Ct. 1467. "Whether the state should have originally installed different or additional devices, or whether conditions at the crossing have since changed ... is immaterial to the preemption question." *Id.* at 358, 120 S.Ct. 1467.

The Bechards also claim that due to the fact that the warning device may have lost its reflectivity; the crossbuck was rendered inoperable and thus, the Railroad is not entitled to federal preemption.[5] The

---

**5.** It should be noted that the accident in this matter occurred on January 13, 2000, at approximately 9:45 a.m.

Bechards again rely on *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472 (8th Cir.1996), a pre-*Shanklin* decision which rejected a claim of federal preemption on the basis of the loss of reflectivity of the existing crossbucks. As noted, the rationale in *Kiemele* however, was implicitly overruled by *Shanklin's* holding that changes in conditions at the crossing are immaterial to the issue of federal preemption. "Whether the state should have originally installed different or additional devices, or whether conditions at the crossing have since changed ... is immaterial to the preemption question." *Id.* at 358, 120 S.Ct. 1467.

Finally, the Bechards argue that the Railroad is not entitled to federal preemption in this matter because the evidence demonstrates that the warning device installed was not properly approved and did not meet the federal minimum requirements set out by the contract. Specifically, the Bechards argue that back-to-back crossbucks, facing southbound made of highly reflectorized material were not installed. However, as previously stated, once it has been established that "the FHWA funded the crossing improvement and the warning devices are actually installed and operating, the regulation displaces state and private decision making authority by establishing a federal law requirement...." *Shanklin* 529 U.S. at 354, 120 S.Ct. 1467. Therefore the type of warnings used at any particular crossing are not scrutinized by "an individual determination of adequacy by a diagnostic team or FHWA official." *Id.* at 356, 120 S.Ct. 1467. Rather, the FHWA's approval of the entire program and the "comprehensive scope" of the regulatory scheme itself is what leads to preemption, not a cross-ing-by-crossing approval by the FHWA. *Id.* Each of the arguments asserted by the Bechards against the Railroad Defendants must be rejected in light of the Supreme Court's decision in *Shanklin*. The Supreme Court has decided to follow in the path of several other Circuits which have held that preemption attaches at the time federal funds are used to install warning devices, regardless of whether an express determination of adequacy has been made. *Id.*

■ It is undisputed that crossbucks were installed at the C.R. 400 East crossing, and that they were installed almost exclusively (90%) with federal funds under a program approved by the FHWA. Once this occurred, federal law preempted any state law claim regarding the adequacy of the warning device at that particular crossing. *See, Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374. This case is controlled by *Shanklin*, and as such, summary judgment must be granted in favor of the Railroad Defendants, CSX Transportation Corporation, and National Railroad Passenger Corporation, a/k/a Amtrak, as it pertains to the claims regarding the adequacy of the warning devices. Federal preemption is appropriate in this instance, thus preempting the Bechards' claims regarding the adequacy of the warning devices at the crossing at C.R. 400 East, Newton County.[6] *See also, Randall v. Norfolk Southern Railway Co.*, 800 N.E.2d 951 (Ind.App.2003).

## 2. Obstruction Of View Claim

The Bechards alleged that apart from its failure to install and maintain fully-opera-

---

**6.** The Railroad Defendants moved to strike the affidavit of William Berg. The statements in the Berg affidavit are irrelevant to the determination of federal preemption as the adequacy of the crossing is controlled by the decision in *Shanklin*. The Berg affidavit is immaterial to the question of federal preemption and the Court has not relied on such in its determination. That being said, this Court does not deem it necessary to strike the affidavit. Therefore the motion to strike the affidavit of William Berg is denied.

tional and approved warnings devices at the crossing, the Railroad also failed to remove sight-line obstructions from its right-of-way. The Bechards attempt to argue that if not for the obstructed view, Ms. Bechard may have attempted to stop earlier because she could have seen the train coming.[7] The Railroad's right-of-way at the end of C.R. 400 East crossing extends 40 feet on either side from the center of the tracks.

Under I.C. Section 8–6–7.6–1, each railroad in the state of Indiana shall maintain each public crossing under its control in such a manner that the operator of any licensed motor vehicle has an unobstructed view for fifteen hundred (1500) feet in both directions along the railroad right-of-way subject only to terrain elevations or depressions, track curvature, or permanent improvements. "This section ... indicate the legislature's goal of affording the motorist an unobstructed view of the tracks so that he may avoid approaching trains." *Menke v. Southern Ry.*, 603 F.2d 1281 (7th Cir.1979). The motorist must have the mandated view at the point where the highway intersects the edge of the railroad right-of-way. *Id.*

For a negligence claim under Indiana law, the element of proximate cause requires both factual causation, in the sense that, but for the defendant's conduct, the plaintiff would not have been injured, and legal causation, meaning it must be immediate, nearest, direct, next in order, and in its legal sense, closes in causal connection. *Grimes v. Norfolk Southern Ry. Co.*, 116 F.Supp.2d 995 (N.D.Ind.2000). The Railroad argues however, that according to Ms. Bechard's own deposition testimony, the vegetation could not have been the proximate cause of the

accident. In her deposition Ms. Bechard states that she was familiar with the crossing because she had taken this route about once a week for two and a half years. She also testified that although the advance warning signs served as a reminder, she didn't need a reminder, she had crossed it before and knew to stop and look for a train. Ms. Bechard testified in her deposition that as she approached the crossing she attempted to stop; however was unable to do so. She further testified that had she not slid that morning and brought her car to a stop at the point intended she would have been able to see down the tracks. The Railroad argues that even if there were a violation of the state law vegetation standard, it was not the proximate cause of the accident.

The Bechards claim that the Railroads' argument calls for the Court to speculate as to Ms. Bechard's view while she proceeded toward the crossing on the date of the accident. The Bechards claim there is no evidence that the train was visible at any location where Ms. Bechard's vehicle could have safely stopped before reaching the crossing, and that therefore the Railroad has not shown that it was not at fault for failure to remove sight-line obstructions from its right-of-way. The Railroad did however, submit pictures of the crossing, which Ms. Bechard claims do not accurately depict the condition of the area around the crossing on the date of the accident, January 13, 2000.[8]

The Bechards further allege that Ms. Bechard's recollection of the facts surrounding the accident is impaired and unreliable due to the brain injury from which she suffered from the accident. The Railroad has filed a motion to strike

---

7. In addressing obstruction of view claims, the time of year, or season is an important factor, therefore it is to be noted that this accident occurred on January 13, 2000.

8. As previously noted, the record does not show any identification by Ms. Bechard, of in what manner the photographs were different from the accident site.

the Bechards' statements that Ms. Bechard's recollection of the facts surrounding the accident is impaired and unreliable due to the brain injury from which she suffered, or alternatively to declare her incompetent to testify at trial.

 This Court is unwilling to resolve such, which will undoubtedly be vital to this case as well as the particular issue of obstruction of view, 'off the cuff.' As such, because serious factual disputes exist as to the testimony of Ms. Bechard, which in turn creates factual disputes as to the issue of obstruction of view itself, summary judgment on this issue is not appropriate at this time. It should be noted however, that this Court agrees that the Bechards cannot have it both ways.

The Seventh Circuit's decision in *Justice* is insightful in this instance as well. As stated, the *Justice* Court reasoned that had it not been for the obstruction, [Justice] would have seen the train and waited for it to pass before he tried to cross the tracks. *See, Justice*, 908 F.2d at 124. The *Justice* decision appears to suggest a 'but for' approach, that when applied to the matter at hand, seems far reaching in terms of the Bechards' claim against the Railroad Defendants. *Merchants Nat'l Bank of Aurora v. Elgin J. & E. Ry. Co.*, 121 Ill.App.2d 445, 257 N.E.2d 216 (1970), gives an excellent summary of the railroad's duty to protect its crossings. In *Merchants*, it was reasoned that the amount of protection required at a crossing is dependent upon the circumstances existing at the particular crossing at the time of the approach of the vehicle. " . . . [f]actors to be considered are population and traffic, physical obstruction to view, and the effect which that amount of confusion incident to railroad or other business in the area would have on the sight or hearing of ordinary signals." *Id.*

When it is all said and done under relevant Indiana Statute and case law interpreting it, these Plaintiffs have an extremely steep uphill climb on their claim relating to obstruction of view. However, under an appropriate reading of Rule 56, these Plaintiffs are entitled to make that attempt, as difficult as it appears to be. The denial of summary judgment on this remaining issue as to the Railroad Defendants alone is a very close call but must be resolved at this point in favor of the Bechards. Given this ruling it would behoove the remaining counsel in this case to give serious and further attention to the adversarial realities now involved here. As to the remaining issue the case will go forward to trial absent any other disposition of it. Therefore, the Railroads' motion for summary judgment is denied as it pertains to the claims related to the alleged obstruction of view, at this time.

Because there has been no judicial determination of Ms. Bechard's competency, it is improper to either strike statements calling into question her ability to recall events or to preclude her from testifying at trial. Therefore, the Railroads' motion to strike the Bechards' statements that Ms. Bechard's recollection of the facts surrounding the accident is impaired and unreliable due to the brain injury from which she suffered from the accident, or alternatively to declare her incompetent to testify at trial is denied at this time. That being said, both sides are now ordered to file simultaneous briefs with this Court regarding the issue of Ms. Bechard's competency, no later than April 5, 2004.

## IV. CONCLUSION

Based on the foregoing, Defendants', Newton County Highway Department and Newton County, motion for summary judgment is **GRANTED.** The Newton County Defendants are entitled to summary judgment in regard to the Bechards' claims pertaining to the adequacy of warn-

ing devices at the C.R. 400 East crossing, as well as the alleged failure to maintain an unobstructed view.

Based on the foregoing, the Railroad Defendants' motion for summary judgment is **GRANTED** in part, and **DENIED** in part. The Railroad Defendants are entitled to summary judgment in regard to the Bechards' claims pertaining to the adequacy of the warning devices at the crossing at C.R. 400 East. However, because genuine issues of material fact exist as to the obstruction of view claim, such is not appropriate for summary judgment at this time.

The Railroad Defendants' motion to strike the affidavit of William Berg is **DE-NIED** and their motion to strike, or in the alternative, declare Ms. Bechard incompetent to testify at trial is likewise **DENIED** at this time. Simultaneous briefs regarding the issue of Ms. Bechard's competency are to be filed with this Court no later than April 5, 2004.

This case is now set for trial by jury in Lafayette, Indiana on Monday, December 20, 2004 at 9:30 a.m.

**IT IS SO ORDERED.**